[Crim. No. 10425. In Bank. Apr. 27, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM BANDHAUER, Defendant and Appellant.

Herbert E. Selwyn, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and S. Clark Moore, Deputy Attorney General, for Plaintiff and Respondent.

TRAYNOR, C. J.—A jury convicted defendant William Bandhauer of first degree murder of Walter Ashley Smith and fixed the penalty at death. This appeal is automatic. (Pen. Code, § 1239, subd. (b).)

Defendant met Smith at Thelma's Tavern in Riverside at approximately 8 p.m. on February 25, 1966. He introduced himself as Mike to Smith's friend, Gerald Allen Thomas, and drank beer with Smith and played pool with him. The three men left Thelma's Tavern in a blue Ford

station wagon driven by defendant. Smith was drunk and was refused drinks at a few bars. Defendant did not appear intoxicated although he was seen drinking beer. When the last bar was closing at 2 a.m., Thomas found that defendant and Smith had left without him while he was playing pool. He had last seen them together at 1:20 a.m.

Defendant was next seen at 4:30 a.m. on the 26th when he rented a room at the Wagon Wheel Motel. He arrived without a car and told the manager that his car had broken down on the freeway. He did not appear drunk, although he looked tired and dirty. He gave a fictitious name and left at 9:30 a.m.

An engineer on a passing train saw Smith's body on the railroad right-of-way near Myers Street in Arlington at 2 a.m. that morning. Police officers arrived about 2:30 a.m. and found that Smith had been shot six times. They found a .22 caliber shell casing near the body and footprints around it and in the vicinity. There was no money in Smith's wallet, although he had approximately $75 in cash the previous morning. A few streets away the officers found a blue Ford station wagon abandoned in a ditch, and in the station wagon they found expended and live shells and a license plate. They removed fingerprints from the car and placed them on cards.

About 11:45 a.m. on February 26, 1966, a police officer, who had been given a description of defendant as a murder suspect, saw him on the street. He stopped defendant and asked if he had any identification. Defendant produced a receipt for rent paid by Paul L. Moslands. The officer searched defendant and found a .22 caliber revolver and live ammunition and approximately $75 in cash. The officer told defendant that he was being arrested on suspicion of murder.

Defendant's footprints fit those near Smith's body, and his fingerprints were identical with those taken from the station wagon. The bullets that killed Smith were fired from the gun taken from defendant.

Police officers searched defendant's room at the Wagon Wheel Motel and found keys that fit the station wagon and also keys that fit a pickup truck owned by Smith.

Defendant pleaded not guilty and not guilty by reason of insanity but later withdrew the plea of not guilty by reason of insanity. He did not offer any evidence at the trial on the issue of guilt but attempted to rebut by cross-examination and

closing argument inferences drawn from the evidence by the prosecution.

Defendant contends that the trial court's refusal to give any instruction as to voluntary manslaughter was reversible error. There is no evidence that would support a manslaughter instruction based on the theory of homicide committed during the heat of passion or during a sudden quarrel.

■ Defendant asserts, however, that there was evidence that he was sufficiently intoxicated to lack the malice necessary to constitute murder, and therefore he was entitled to a voluntary manslaughter instruction on the theory of diminished capacity. (See *People* v. *Conley,* 64 Cal.2d 310, 319 [49 Cal. Rptr. 815, 411 P.2d 911].)

The record does not support this contention. Although Smith was refused drinks during the evening because of his apparent intoxication, defendant was not. He was not seen to have had more than six or seven beers during the six hours he was at various bars between 8 p.m. and 2 a.m., and he did not appear to be intoxicated. There is no evidence that his drinking had any substantial effect on him, or that he was so intoxicated that he did not or could not harbor malice. There is thus no substantial evidence of diminished capacity to support a voluntary manslaughter instruction on that theory.

■ Defendant claims that it was prejudicial error to admit evidence that he had stolen the station wagon and the license plates on it. He asserts that there was abundant evidence to connect him with the station wagon and that it was needlessly prejudicial to introduce evidence that he had stolen the car and its plates. Such proof, however, was relevant not only to connect defendant with the car, but as evidence of his plan, motive, and intent throughout the night of the crime. It tended to rebut any inference that he abandoned the car because he was intoxicated, and it supported the prosecution's theory of robbery murder by indicating a plan to use a stolen vehicle to commit robberies. Accordingly the trial court did not abuse its discretion in admitting the evidence. (See *People* v. *McCaughan,* 49 Cal.2d 409, 421 [317 P.2d 974]; *People* v. *Gonzales,* 87 Cal.App2d 867, 877 [198 P.2d 81].)

It is next contended that the trial court erred in allowing defendant to withdraw his plea of not guilty by reason of insanity without making an independent determination that he could intelligently withdraw the plea. The trial court determined that the withdrawal of the plea was voluntary. (See *People* v. *Wein,* 50 Cal.2d 383, 408-409 [326 P.2d

457].) ▇ Defendant was fully advised of his rights before he withdrew the plea, and he indicated that he had discussed the matter with his counsel. Since defendant had a psychiatric examination arranged for by his counsel before the plea was withdrawn, the trial court could properly assume that defendant's decision, arrived at with advice of counsel, was intelligently and voluntarily made.

Defendant asserts that the district attorney was guilty of prejudicial misconduct in making statements to the jury that he believed in defendant's guilt and that he believed that defendant should be given the death penalty. ▇ Counsel may vigorously argue his case and is not limited to ''Chesterfieldian politeness'' (*Ballard* v. *United States* (9th Cir. 1945) 152 F.2d 941, 943 (reversed on other grounds, 329 U.S. 187 [91 L.Ed. 181, 67 S.Ct. 261]); *People* v. *Nicolaus,* 65 Cal.2d 866, 880 [56 Cal.Rptr. 635, 423 P.2d 787]; *People* v. *Hardenbrook,* 48 Cal.2d 345, 352-353 [309 P.2d 424]), but he cannot overreach by stating his personal belief based on facts not in evidence. (*People* v. *Love,* 56 Cal.2d 720, 730 [16 Cal. Rptr. 777, 17 Cal.Rptr. 481, 366 P.2d 33, 809].) We find no violation of this rule at the trial on the issue of guilt.

At the trial on the issue of penalty, however, the prosecutor in the guise of argument presented facts not in evidence. ▇ From the outset of the trial, the prosecutor informed the jury that he was running for office and that as a public officer he bore a mantle of trust that required him to be fair. At the beginning of his argument on the issue of penalty he stated: ''. . . as I told you right from the start—there is only one person in this courtroom that is required to see that the defendant gets a fair trial anymore than I am, and that is the judge.'' The prosecutor pointed out to the jury why he had objected to the introduction of certain evidence, indicating that he thought that it might be damaging to defendant. ▇ Within a short time after he had laid this foundation of his public responsibility he told the jury: ''During the many many years that I have been prosecutor, I have seen some pretty depraved character [*sic*]. Usually they are kind of old because it takes a little while to become this depraved. But it has seldom been my misfortune to see a more deprave [*sic*] character than this one.'' Further along in his argument the prosecutor told the jury: ''. . . I have stood before this court on occasions and recommended life imprisonment in first degree murder cases. . . .'' The statement that defendant was one of the most depraved characters that the prose-

cutor had seen was testimonial. It was not related to the evidence in the case and was not subject to cross-examination. It presented to the jury an external standard by which to fix the penalty based on the prosecutor's long experience. The error was aggravated by the prosecutor's telling the jury that he would recommend life imprisonment in a proper case, for he thus made clear that his request for the death penalty was based on his personal judgment and belief. (See *State* v. *Horr*, 63 Utah 22, 46 [221 P. 867] ; Levin and Levy, *Persuading the Jury*, 105 U.Pa.L.Rev. 139, 156.)

The Attorney General contends that since there was no objection, this issue cannot be raised on appeal. ▮ The argument on the public responsibility of the prosecutor was not by itself subject to objection. ▮ The testimonial statements were injected gradually into the argument so that it was not until the prosecutor made the clinching assertion that he had seldom seen a more depraved character that grounds for objection were apparent. It was then too late to cure the error by admonition, and any effort of the prosecutor to cure the error by formally retracting what he obviously believed would only have compounded it. Under these circumstances defendant is not precluded from raising the issue for the first time on appeal. (*People* v. *Love, supra,* 56 Cal.2d 720, 733.) It is reasonably probable that a result more favorable to defendant would have been reached in the absence of the prosecutor's presenting to the jury facts not in evidence. (Cal. Const., art. VI, § 13 ;▮ *People* v. *Hines,* 61 Cal.2d 164, 169 [37 Cal.Rptr. 622, 390 P.2d 398] ; *People* v. *Hamilton,* 60 Cal.2d 105, 136-137 [32 Cal.Rptr. 4, 383 P.2d 412].)

Two questions remain that may arise on retrial.

Defendant contends that in the argument at the trial on the issue of penalty, the prosecution should not have been allowed two arguments when the defendant had only one. We have previously held on the basis of the analogy to the practice at the trial on the issue of guilt that the prosecution may also open and close the argument at the trial on the issue of penalty. (*People* v. *Love, supra,* 56 Cal.2d 720, 725 ; *People* v. *Gonzales,* 56 Cal.2d 317, 319 [14 Cal.Rptr. 639, 363 P.2d 871] ; *People* v. *Corwin,* 52 Cal.2d 404, 407 [340 P.2d 626] ; see Pen. Code, § 1093, subd. 5.) Upon further consideration, however, we have concluded that the analogy to the trial on the issue of guilt should not control the practice on the issue of penalty. ▮ The prosecutor's burden of proving guilt beyond a

reasonable doubt at the trial on the issue of guilt justifies his closing the argument as well as opening it. At the trial on the issue of penalty, however, neither side has the burden of proving that one or the other penalty is the proper one in the case at hand, and there is no logical reason to favor one side over the other in argument. Equal opportunity to argue is also consistent with the Legislature's strict neutrality in governing the jury's choice of penalty. (*People* v. *Green,* 47 Cal.2d 209, 217-232 [302 P.2d 307].) ▮ Although we are of the opinion that there is no reasonable probability that the sequence of closing argument alone would affect the result (Cal. Const., art. VI, § 13; *People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243]), we believe that scrupulous regard for complete impartiality and fairness dictates that the extent of the argument on each side at the trial on the issue of penalty should be equal and that each side should have an opportunity to rebut the argument of the other. Accordingly, hereafter the prosecution should open and the defense respond. The prosecution may then argue in rebuttal and the defense close in surrebuttal.

Defendant contends that the court excused jurors for cause without adequately establishing that their views with respect to the death penalty disqualified them. The questions asked by the court were somewhat ambiguous and further elucidation might have revealed that some of the jurors who were excused merely had doubts with respect to the death penalty. ▮ Such doubts are not sufficient to disqualify a juror so long as he conscientiously believes that he could return a death penalty verdict in a proper case. (*People* v. *Nicolaus, supra,* 65 Cal.2d 866, 882; *People* v. *Smith,* 63 Cal.2d 779, 789 [48 Cal.Rptr. 382, 409 P.2d 222]; *People* v. *Gilbert,* 63 Cal.2d 690, 712 [47 Cal.Rptr. 909, 408 P.2d 365].) What constitutes a proper case is, of course, for the juror to decide.

The judgment is reversed insofar as it relates to penalty. In all other respects, it is affirmed.

Tobriner, J., Mosk, J., and Sullivan, J., concurred.

PETERS, J.—I agree with the majority that reversible error was committed in the penalty trial, and so I agree with the reversal of the penalty judgment. But I dissent from the majority opinion insofar as it affirms the determination of

guilt. I believe that there was some evidence of intoxication, and that defendant was therefore entitled to a manslaughter, instruction based on the concept of diminished responsibility.

The law on this point is well settled. It is not whether there was ''substantial'' evidence to support the defense of diminished capacity, as stated by the majority, but whether there was ''any'' evidence, no matter how ''weak'' or ''incredible'' to support that defense. These principles were summarized in *People* v. *Carmen,* 36 Cal.2d 768, at page 773 [228 P.2d 281], where it was said: ''Section 1127 of the Penal Code provides: '. . . *The court shall inform the jury in all cases that the jurors are the exclusive judges of all questions of fact submitted to them and of the credibility of the witnesses.*' (Emphasis added.) It has been held that a defendant is entitled to instructions on his theory of the case as disclosed by the evidence, no matter how weak. As so ably stated in *People* v. *Burns,* 88 Cal.App.2d 867, 871 [200 P.2d 134], with ample citation of authority: 'It is *elementary* that the court should instruct the jury upon every material question upon which there *is any evidence deserving of any consideration whatever. (People* v. *Quimby,* 6 Cal.App. 482, 486 [92 P. 493]; *People* v. *Foster,* 79 Cal.App. 328, 337 [249 P. 231]; *People* v. *Hill,* 76 Cal.App.2d 330, 343 [173 P.2d 26].) *The fact that the evidence may not be of a character to inspire belief does not authorize the refusal of an instruction based thereon. (People* v. *Perkins,* 75 Cal.App.2d 875, 881 [171 P.2d 919]; *People* v. *Peete,* 54 Cal.App. 333, 356, 359 [202 P. 51]; *People* v. *Wong Hing,* 176 Cal. 699, 705-706 [169 P. 357].) *That is a question within the exclusive province of the jury. However incredible the testimony of a defendant may be he is entitled to an instruction based upon the hypothesis that it is entirely true. (People* v. *Perkins, supra,* p. 881; *People* v. *Williamson,* 6 Cal.App. 336, 339 [92 P. 313]; *People* v. *Keefer,* 65 Cal. 232, 234 [3 P. 818].) . . .' ''

This principle has been reaffirmed on many occasions. In *People* v. *Modesto,* 59 Cal.2d 722 [31 Cal.Rptr. 225, 382 P.2d 33], *Carmen* was not only reaffirmed but it was held that if the instruction should have been given failure to give it was *per se* reversible. (See also *People* v. *Conley,* 64 Cal.2d 310 [49 Cal.Rptr. 815, 411 P.2d 911].)

In the instant case there was some evidence, perhaps weak, and perhaps not very convincing, that defendant was under the influence of alcohol sufficient to affect his judgment when

the crimes were committed. As the majority opinion correctly discloses, defendant was in the company of Smith and Thomas from 8 p.m. until about 2 a.m. The evidence is uncontradicted that all were drinking during this period. Smith was so visibly drunk that several bars refused to serve him any more drinks. While the evidence is that defendant was not visibly intoxicated there is evidence, referred to by the majority, that defendant "was not seen to have had more than six or seven beers." Thus he was observed to have had at least six or seven beers. If each bottle contained a pint of beer that would mean defendant consumed at least three and one-half quarts, or nearly a gallon, in less than six hours. If each glass contained only 10 ounces that would equal 70 ounces, or substantially over two quarts. The majority necessarily hold that, as a matter of law, that quantity of beer could not have affected the judgment of defendant. In so holding the majority are, in my opinion, improperly weighing the evidence, refusing to indulge in possible inferences in favor of defendant, and setting themselves up as experts in the field of alcoholism. There is, of course, substantial evidence that defendant did not appear affected by his consumption of the liquor, but the point is that there is some evidence to support an inference that he had consumed enough liquor so that his judgment could have been affected. There certainly is some evidence "no matter how weak" to support such an inference and to bring this case within the ambit of the rule requiring an instruction on diminished responsibility.

BURKE, J.—I concur in the affirmance of the judgment as to guilt but dissent from the reversal of the judgment as to penalty.

The majority hold that a few isolated remarks of the prosecutor selected out of his closing arguments that extend over 35 pages of transcript require reversal of the judgment as to penalty even though at the trial no objection was made to the remarks. Most of the 35 pages of the prosecutor's arguments concerned matters such as the brutal nature of the killing, the fact that defendant "emptied this gun into [his victim's] body, some from the back and some from the front," defendant's long history of criminal and other antisocial conduct, and his repeated failures to take advantage of opportunities given him to rehabilitate himself. At one place alone in the argument the prosecutor stated, "During the many years that I have been a prosecutor, I have seen some pretty depraved

character [*sic*]. Usually they are kind of old because it takes a little while to become this depraved. But it has seldom been my misfortune to see a more depravec [*sic*] character than this one. If Mr. Walter Ashley Smith has forfeited his right to live at the hands of Mr. Bandhauer, I don't think that we should be particularly upset about Mr. Bandhauer now having to forfeit his life for the life that he has led in the past few years. It is not a very equal trade, is it?''

Subsequently the prosecutor stated, ''I can readily see in some cases of first degree murder—and I have stood before this court on occasions and recommended life imprisonment in first degree murder cases—for example,'' and the prosecutor went on to state two examples of cases where the death penalty might not be justified: the first, a crime of passion where one spouse was found in a compromising position by the other spouse; and, the other, a crime in which the particular participant took no active part in a robbery and murder, except to drive the getaway car and had told his partner not to use a loaded gun because he did not want to be involved in any killing. The prosecutor then stated that in the instant case ''You don't have just a trigger man. You have a vicious, cold-blooded killer here. This man wanted to make sure Mr. Walter Ashley Smith was dead. There was only one reason for that—so he couldn't get on this witness stand and tell us what happened. This man has had enough of State Prison and didn't want to go back, and the one man who could send him back . . . [was] Mr. Walter Ashley Smith.''

In *People* v. *Lopez*, 60 Cal.2d 223, 251-252 [32 Cal.Rptr. 424, 384 P.2d 16], which affirmed judgments imposing the death penalty, this court unanimously held that a statement by the prosecutor ''that he had never seen a more cold-blooded killing'' was a proper argument at the penalty trial. The prosecutor in *Lopez* had not taken the stand to testify, and this court apparently was of the view that the quoted statement was not to be interpreted literally but rather was merely a way of saying that the killing was an extremely cold-blooded one, a fact fully warranted by the evidence. The prosecutor's statement in *Lopez* is similar to the prosecutor's statement here that defendant was one of the most depraved characters that the prosecutor had seen. If the instant statement were construed as merely an assertion that defendant was extremely depraved, the argument is not improper since the evidence fully justified such an assertion. (*People* v. *Terry*, 57 Cal.2d 538, 561 [21 Cal.Rptr. 185, 370 P.2d 985];

*People* v. *Wein,* 50 Cal.2d 383, 395-396 [326 P.2d 457].) There was evidence that defendant robbed and intentionally killed the decedent by firing six bullets into the victim's body including one that entered his heart and that defendant shot the decedent from the back as well as the front. The evidence also showed that defendant has a juvenile court record, was dishonorably discharged from the armed services, and has been convicted of various crimes including receiving stolen property, forgery, and escape from a county farm.

Even if the prosecutor's statements pointed to by the majority were improper, defendant may not now complain since he made no objection at the trial. Had one been made, the trial court could easily have removed any harmful effect of the remarks by instructing the jury to disregard them. (*People* v. *Jackson,* 59 Cal.2d 375, 381 [29 Cal.Rptr. 505, 379 P.2d 937] ; *People* v. *Brice,* 49 Cal.2d 434, 437 [317 P.2d 961] ; *People* v. *Hampton,* 47 Cal.2d 239, 240-241 [302 P.2d 300].)

Moreover, the remarks of the prosecutor referred to by the majority are but a minor portion of his arguments, and at the close of the arguments the jury was instructed that it should not consider as evidence any statement made by counsel during the trial unless such statement is made as an admission or stipulation conceding the existence of a fact or facts and that the jury should decide the case solely upon the evidence presented to it and the instructions given by the court. Under the circumstances any error in the arguments in question was not prejudicial under article VI, section 13, of our Constitution. (*People* v. *Wilson,* 60 Cal.2d 139, 156 [32 Cal.Rptr. 44, 383 P.2d 452] ; *People* v. *Pike,* 58 Cal.2d 70, 96 [22 Cal.Rptr. 664, 372 P.2d 656] ; *People* v. *Garner,* 57 Cal.2d 135, 156 [18 Cal.Rptr. 40, 367 P.2d 680] ; *People* v. *Lane,* 56 Cal.2d 773, 787 [16 Cal.Rptr. 801, 366 P.2d 57].)

I would affirm the judgment in its entirety.

McComb, J., concurred.

Appellant's petition for a rehearing was denied May 24, 1967. Peters, J., was of the opinion that the petition should be granted.