**Ex parte William Clark BRYAN, Jr.**

**No. 41618.**

Court of Criminal Appeals of Texas.

Oct. 30, 1968.

Will Gray, Houston, for petitioner.

R. A. Bassett, Dist. Atty., Richmond, W. Jack Sayler, Asst. Dist. Atty., Bay City, and Leon B. Douglas, State's Atty., Austin, for the State.

OPINION

ONION, Judge.

This is a habeas corpus proceeding brought under the provisions of Article 11.07, Vernon's Ann.C.C.P., as amended (Acts 1967, 60th Leg., Ch. 659, p. 1734, eff. Aug. 28, 1967). The petitioner seeks to set aside as void his 1965 conviction for murder where the penalty imposed was death. Such conviction was affirmed by this Court in 406 S.W.2d 210.

On July 11, 1968, a habeas corpus petition was presented to the convicting court pursuant to the provisions of Article 11.07,

supra, and in compliance with the Order of the United States District Court, Southern District of Texas, Houston Division, remanding applicant's Federal Petition for Habeas Corpus to the state trial court for determination of the issue of petitioner's mental competency to stand trial in 1965 in light of the decisions of this Court in Townsend v. State, 427 S.W.2d 55, and Morales v. State, 427 S.W.2d 51.

The convicting court refused to entertain the habeas corpus petition and denied the same without a hearing.

On July 12, 1968, the petitioner presented another habeas corpus petition to the convicting court contending, among other things, that the jury which imposed the death penalty upon him was selected in violation of the doctrine of Witherspoon v. State of Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, which decision of the United States Supreme Court is to be applied retroactively. See footnote 22 thereof. See also Pittman v. State, Tex.Cr.App., 434 S.W.2d 352. At the hearing granted upon such petition the only evidence presented was an agreed stipulation, both the State and the petitioner specifically declining the court's offer to hear any further evidence that either wished to present. Said written stipulation reflects that the voir dire examination of the prospective jurors was not recorded by the court reporter as no request was made for the same; that during petitioner's trial 44 of the 117 prospective jurors examined were challenged for cause by the State after such prospective jurors expressed conscientious or religious scruples against capital punishment, or expressed the opinion they were opposed to the death penalty in principle; that such prospective jurors were excused by the court upon challenge for cause by the State "solely because they expressed either general objections to the death penalty, or conscientious or religious scruples against its infliction"; that none of the challenged jurors was questioned further to determine whether or not they could, in a proper case, set aside their scruples and as-

sess the death penalty if such penalty were justified by the facts, nor whether their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's guilt.

The judge of the convicting court, who also was the trial judge at petitioner's trial, entered findings of fact in accordance with the stipulation, but concluded that the jury was selected in compliance with Articles 35.15, 35.16, and 35.17, V.A.C.C.P. These articles did not become effective until January 1, 1966, which was after the date of petitioner's trial. Obviously, the judge meant to refer to the statutory provisions for selecting jurors in capital cases under the former Code. The record of such habeas corpus proceedings was transmitted to this Court. See Ex parte Young, Tex. Cr.App., 418 S.W.2d 824.

The petitioner has now filed a new habeas corpus petition in this Court seeking to invoke our original jurisdiction under the procedure authorized in Ex parte Young, supra, raising both the mental competency and jury selection issues. Such new petition was utilized to invoke our original jurisdiction as to the mental competency question since the convicting court denied the petition presented to it on July 11 without a hearing, Ex parte Young at p. 830, but was unnecessary as to the jury selection question where the petitioner was accorded a hearing. Nevertheless, these matters have been consolidated, docketed, and submitted and will be considered together.

In Witherspoon v. State of Illinois, supra, the Supreme Court held that due process voided a death sentence imposed by a jury from which were excluded all persons expressing general objections to or conscientious or religious scruples against capital punishment.

The holding is clarified to some extent by Mr. Justice Stewart, who delivered the majority opinion, when he wrote:

"The issue before us is a narrow one. It does not involve the right of the pros-

ecution to challenge for cause those prospective jurors who state that their reservations about capital punishment would prevent them from making an impartial decision as to the defendant's guilt. Nor does it involve the State's assertion of a right to exclude from the jury in a capital case those who say that they could never vote to impose the death penalty or that they would refuse even to consider its imposition in the case before them." See also footnote 21 of said majority opinion.

Further, in footnote 9 of the Witherspoon opinion the Court said in part:

" * * * it cannot be assumed that a juror who describes himself as having 'conscientious or religious scruples' against the infliction of the death penalty or against its infliction 'in a proper case' (see People v. Bandhauer, 66 Cal. 2d 524, 531, 58 Cal.Rptr. 332, 337, 426 P.2d 900, 905) thereby affirms that he could never vote in favor of it or that he would not consider doing so in the case before him. See also the *voir dire* in Rhea v. State, 63 Neb. 461, 466–468, 88 N.W. 789, 790. Cf. State v. Williams, 50 Nev. 271, 278, 257 P. 619, 621. Obviously many jurors 'could, notwithstanding their conscientious scruples [against capital punishment], return * * * [a] verdict [of death] and * * * make their scruples subservient to their duty as jurors.' Stratton v. People, 5 Colo. 276, 277. Cf. Commonwealth v. Henderson, 242 Pa. 372, 377, 89 A. 567, 569. Yet such jurors have frequently been deemed unfit to serve in a capital case. See e. g., Rhea v. State, supra, 63 Neb., at 470–471, 88 N.W., at 791–792. See generally, W. Oberer, Does Disqualification of Jurors for Scruples Against Capital Punishment Constitute Denial of Fair Trial on Issue of Guilt?, 39 Tex.L.Rev. 545, 547–548 (1961); Comment, 1968 Duke L.J. 283, 295–299.

"The critical question, of course, is not how the phrases employed in this area have been construed by courts and commentators. What matters is how they might be understood—or misunderstood —by prospective jurors. Any 'layman * * * [might] say he has scruples if he is somewhat unhappy about death sentences. * * * [Thus] a general question as to the presence of * * * reservations [or scruples] is far from the inquiry which separates those who would never vote for the ultimate penalty from those who would reserve it for the direst cases.' Id., at 308–309. Unless a venireman states unambiguously that he would automatically vote against the imposition of capital punishment no matter what the trial might reveal, it simply cannot be assumed that that is his position."

It is clear from the stipulation and the findings of the trial court that the jury in petitioner's case was selected in violation of Witherspoon, and that a substantial number of the jury panel was "excluded without any effort to find out whether their scruples would invariably compel them to vote against capital punishment." Witherspoon at 88 S.Ct. 1773. Thus the State crossed the "line of neutrality" with respect to penalty in the selection of the jury.

In Witherspoon, despite the petitioner's contentions to the contrary, the Court found the data adduced "too tentative and fragmentary to establish jurors not opposed to the death penalty tend to favor the prosecution in the determination of guilt." Thus the Court refused to adopt a per se constitutional rule requiring the reversal of every conviction returned by a jury selected as was the one in Witherspoon. Such holding raises the possibility of holding a separate hearing on punishment at this time in the case at bar in order that the requirements of Witherspoon be met.

■ However, it is observed that petitioner's one stage 1965 trial was conducted prior to the effective date of the 1965 Code of Criminal Procedure and to the 1967 amendment to Article 37.07, V.A.C.C.P., authorizing for the first time bifurcated

trials in capital cases where the State is seeking the death penalty. As to the trial of such capital cases under the said 1965 Code prior to said 1967 amendment, see Rojas v. State, Tex.Cr.App., 404 S.W.2d 30; Williams v. State, Tex.Cr.App., 415 S.W.2d 917; Jones v. State, Tex.Cr.App., 416 S.W.2d 412; Wilhelm v. State, Tex. Cr.App., 426 S.W.2d 850.

Even if the case at bar had been tried under the provisions of Article 37.07, supra, "this Court is without authority to direct a new trial before a different jury on the issue of punishment only." Ellison v. State, Tex.Cr.App., 432 S.W.2d 955, this day decided. See also Articles 44.24, 44.29, V.A.C.C.P. Therefore, petitioner is entitled to a new trial.

In the event of a new trial the district court's attention with regard to petitioner's competency to stand trial is directed to Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815, and the decisions of this Court in Townsend v. State, supra, and Morales v. State, supra.

The relief prayed for is granted, the petitioner is ordered remanded to the Sheriff of Fort Bend County to answer the indictment in Cause No. 8450 in the 24th District Court.

It is so ordered.