Michael Wayne EVANS, Appellant,

v.

The STATE of Texas, Appellee.

No. 60016.

Court of Criminal Appeals of Texas, En Banc.

Sept. 10, 1980.

Rehearing Denied April 29, 1981.

E. Brice Cunningham, Walter L. Irvin, Dallas, for appellant.

Henry Wade, Dist. Atty., William T. Westmoreland, Jr., James Walker and Gerald Banks, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction of capital murder, wherein the jury assessed the death penalty. See V.T.C.A., Penal Code, § 19.03; Article 37.071, V.A.C.C.P.

Appellant advances 38 grounds of error, but in light of *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980), we are immediately confronted with appellant's ground of error No. 13 contending certain prospective jurors were improperly excused under V.T.C.A., Penal Code, § 12.-31(b). The ground of error is multifarious and not in accordance with Article 40.09, § 9, V.A.C.C.P. Twenty-four prospective jurors are mentioned by juror numbers only. No reference is made to names and no reference is made to any part of this voluminous record where the voir dire examination of these prospective jurors took place. Only a statement is made that a number of jurors were improperly excused under V.T.C.A., Penal Code, § 12.31(b). No argument is advanced in the brief as why this is true under the circumstances surrounding the challenge for cause of each of these prospective jurors. Nothing is presented for review. Article 40.09, § 9, V.A.C.C.P. In light of the extreme penalty assessed, the recent *Adams* decision, and Article 40.09, § 13, V.A.C.C.P., we shall, however, consider the contention "in the interest of justice." This has necessitated an examination of literally hundreds of pages of the voir dire examination page by page in order to locate the particular voir dire examination to which appellant apparently had reference. Neither this court with its tremendous caseload nor any other appellate court, should be required to do this when the appellant could have provided the ready reference, index, and page numbers in his brief.

An examination of the excusing of the prospective jurors complained of shows one who was challenged for cause by the appellant and his challenge was sustained. Other prospective jurors excused were clearly disqualified under *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), independent of V.T.C.A., Penal Code, § 12.31(b), although the court may have used both as the basis for sustaining the challenge for cause by the State. There were other prospective jurors who were excused under V.T.C.A., Penal Code, § 12.-31(b), where there was no objection to such action. Still other prospective jurors were excused under said statute where the only objection was "Voir dire objections 1 and 2," which is totally meaningless as far as this record is concerned. We have found no agreement between the parties with approval of the trial court as to such type of objection, no local custom was dictated into the record, and our attention has not been directed to any portion of the record which reflects the nature of the objection.

Nevertheless, V.T.C.A., Penal Code, § 12.-31(b), was applied in this case in at least three instances [1] to exclude prospective jurors in contravention of the Sixth and Fourteenth Amendments on a broader basis than that as construed and applied in *Witherspoon v. Illinois,* supra. This was the basis of the reversal in *Adams v. Texas,* supra. In *Witherspoon* the United States Supreme Court said:

"Specifically, we hold that a sentence of death cannot be carried out if the jury that imposed or recommended it was cho-

---

1. See prospective jurors 7, 17 and 103, Randolph Davis, Lillie Ann Rurkey and Roy Bennett where the prospective jurors were excused over proper objections.

sen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. No defendant can constitutionally be put to death at the hands of a tribunal so selected."

In footnote No. 9 of the *Witherspoon* opinion it was stated in part:

"[I]t cannot be assumed that a juror who describes himself as having 'conscientious or religious scruples' against the infliction of the death penalty or against its infliction 'in a proper case' (see *People v. Bandhauer*, 66 Cal.2d 524, 531, 58 Cal. Rptr. 332, 337, 426 P.2d 900, 905) thereby affirms that he could never vote in favor of it or that he would not consider doing so in the case before him . . . .

" . . . Unless a venireman states unambiguously that he would automatically vote against the imposition of capital punishment no matter what the trial might reveal, it simply cannot be assumed that that is his position."

There were a number of other prospective jurors who were improperly excused under said § 12.31(b), but the only objection was "Voir dire objections Nos. 1 and 2," which has no meaning as far as this record is concerned.

V.T.C.A., Penal Code, § 12.31(b), is part of our state death penalty scheme enacted after *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). See now V.T.C.A., Penal Code, § 19.03, and Article 37.071, V.A.C.C.P. It provides:

"Prospective jurors shall be informed that a sentence of life imprisonment or death is mandatory on conviction for capital felony. A prospective juror shall be disqualified from serving as a juror unless he states under oath that the mandatory penalty of death or imprisonment for life will not affect his deliberations on any issue of fact."

*Adams v. Texas*, supra, presented the question whether Texas contravened the Sixth and Fourteenth Amendments as construed and applied in *Witherspoon* when it excluded members of the venire from jury service because they were unable to take an oath that the [said § 12.31(b)] mandatory penalty of death or imprisonment for life would not "affect [their] deliberations on any issue of fact." The Court reversed the conviction, holding that the exclusions were inconsistent with *Witherspoon* and set aside the death penalty imposed on Adams. The Court held that *Witherspoon* and § 12.31(b) may not co-exist as separate and independent bases for excluding prospective jurors so as to permit exclusion under § 12.31(b) on a ground broader than permitted by *Witherspoon*. The Court noted that although the State could, consistent with *Witherspoon*, use § 12.31(b) to exclude prospective jurors whose views on capital punishment are such as to make them unable to follow the law or obey their oaths, the use of § 12.31(b) to exclude such prospective jurors on broader ground based on their opinion concerning the death penalty is impermissible.

In *Adams* the Court observed here the touchstone of the inquiry under § 12.31(b) was not whether the prospective jurors could and would follow their instructions and answer the posited questions in the affirmative if they honestly believed the evidence warranted it beyond a reasonable doubt, but rather whether the fact that the imposition of the death penalty would follow automatically from affirmative answers to the submitted questions would have any effect at all on the jurors' performances of their duties. Such a test could and did, the Court held, exclude jurors whose only fault was to take their responsibilities with special seriousness or to acknowledge honestly they might or might not be affected. It did not appear to the court that these prospective jurors were so irrevocably opposed to capital punishment as to frustrate the State's legitimate efforts to administer its constitutionally valid death penalty scheme.[2]

---

2. In speaking of the test applied under § 12.-31(b) in *Adams*, the Supreme Court wrote:

"Such a test could, and did, exclude jurors who stated that they would be 'affected' by

The same fault in *Adams* infected the voir dire examination of the prospective jurors enumerated in the instant case, as well as others, if the objections, "voir dire examination objections 1 and 2," are valid objections. Even one improper sustaining of a challenge for cause means the death penalty may not be imposed. See *Davis v. Georgia*, 429 U.S. 122, 97 S.Ct. 399, 50 L.Ed.2d 339 (1976). One cannot read the voir dire examination in this case without finding a number of examples where the prospective juror stated he was not opposed to the death penalty in a proper case, that he could determine the issue of guilt on the evidence presented without regard to the mandatory penalty of life imprisonment or death, if based on evidence of guilt beyond a reasonable doubt, that he could affirmatively answer the two or possibly three questions submitted at the penalty stage if the evidence warranted the same beyond a reasonable doubt knowing the death penalty would result and then have the prosecutor relentlessly pursue the interrogation as to whether the prospective juror could state the mandatory penalty of death or life imprisonment would not "affect" his deliberations on the issues of fact submitted. When the prospective juror, usually without prior jury experience and not having heard the evidence in the instant case, could not positively or absolutely state under oath that such penalties would not "affect" them in some way in their deliberations they were excused upon challenge for being unable to take the oath under § 12.31(b). For the

It has long been held by this court that it may not reduce the punishment assessed by the jury. *Ocker v. State*, 477 S.W.2d 288, 290 (Tex.Cr.App.1972), and cases cited therein. And it has been held that where a *Witherspoon* type error has occurred it has been the consistent policy of this court that although the error is to penalty alone, the cause must be reversed for an entirely new trial. *Ellison v. State*, 432 S.W.2d 955 (Tex. Cr.App.1968); *Grider v. State*, 468 S.W.2d 393 (Tex.Cr.App.1971); *Ocker v. State*, supra. This is so, for as explained in *Ellison v. State*, supra, ". . . this court is without authority to direct a new trial before a different jury on the issue of punishment only." See also Articles 37.07 and 37.071, V.A.C.C.P.

Article 44.24(b), V.A.C.C.P., provides:

"The Court of Criminal Appeals may affirm the judgment of the court below, or may reverse and remand for a new trial, or may reverse and dismiss the case, or may reform and correct the judgment, as the law and the nature of the case may require."

In *Ocker* this court (at p. 291) wrote:

"Thus the statute does not provide for modification of punishment, nor do we feel that it may be inferred. In that the statute provides for reformation and correction, we feel that we are limited to those powers. (Art. 5, § 5 of the Texas Constitution, Vernon's Ann.St. restricts

errors noted, the judgment must be reversed and remanded.

---

the possibility of the death penalty, but who apparently meant only that the potentially lethal consequences of their decision would invest their deliberations with greater seriousness and gravity or would involve them emotionally. Others were excluded only because they were unable positively to state whether or not their deliberations would in any way be 'affected.' But neither nervousness, emotional involvement, nor inability to deny or confirm any effect whatsoever is equivalent to an unwillingness or an inability on the part of the jurors to follow the court's instructions and obey their oaths, regardless of their feelings about the death penalty. The grounds for excluding these jurors were consequently insufficient under the Sixth and Fourteenth Amendments. Nor in our view

would the Constitution permit the exclusion of jurors from the penalty phase of a Texas murder trial if they aver that they will honestly find the facts and answer the questions in the affirmative if they are convinced beyond a reasonable doubt, but not otherwise, yet who frankly concede that the prospects of the death penalty may affect what their honest judgment of the facts will be or what they may deem to be a reasonable doubt. Such assessments and judgments by jurors are inherent in the jury system, and to exclude all jurors who would be in the slightest way affected by the prospect of the death penalty or by their views about such a penalty would be to deprive the defendant of the impartial jury to which he or she is entitled under the law."

the jurisdiction of this Court to the extent provided by statute.)

In *Whan v. State*, 485 S.W.2d 275 (Tex. Cr.App.1972), this court stated:

"It has been recently decided that this Court does not have the power to assess punishment at life imprisonment in cases where the death penalty has been assessed illegally by a jury, nor may this Court remand the case for assessment of punishment only, where the punishment was originally set by a jury. *Ocker v. State*, 477 S.W.2d 288 (Tex.Cr.App.1972). Therefore, it would not be proper for this Court to reverse the judgment of the trial court, insofar as it imposes the death penalty, and to reform the judgment so that punishment is assessed at life imprisonment."

"This Court may reform a sentence so as to conform to the judgment and may reform a judgment to conform to the verdict of the jury. However, except where the penalty is absolutely fixed by law or where the sentence fails to apply the indeterminate sentence law (Art. 42.-09, Vernon's Ann.C.C.P.), this Court may not pass sentence." *Ocker v. State*, supra, at p. 290.

And, of course, this court does not possess the authority of commutation which is granted to the Governor under the State Constitution. Article IV, § 11. See also Article 48.01, V.A.C.C.P.

The mere fact that the range of penalty for murder under the former Penal Code is different than that for capital murder under the current Penal Code does not change the jurisdiction of this court and authorize us to commute or somehow reduce the death penalty which has been set aside by the United States Supreme Court.

The case must be reversed and remanded.

ROBERTS, Judge, dissenting.

Today, in this case and in *Grijalva v. State*, 614 S.W.2d 420, and *Loudres v. State*, 614 S.W.2d 407, the Court holds that the judgments of guilt must be reversed and the cases remanded for entirely new trials. The only errors that have produced these results were errors in excusing jurors who indicated that the death penalty might affect their deliberations. These errors were violations of the Sixth and Fourteenth Amendments. *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980). The Constitution of the United States does not require that the judgments of guilt be reversed; it only "disentitles the State to execute a sentence of death imposed by a jury from which such prospective jurors have been excluded." 448 U.S. at 50, 100 S.Ct. at 2529; *Witherspoon v. Illinois*, 391 U.S. 510, 522–523 n. 21, 88 S.Ct. 1770, 1777 n. 21, 20 L.Ed.2d 776 (1968) ("Nor, finally, does today's holding render invalid the *conviction*, as opposed to the *sentence*, in this or any other case.").

There is nothing in the Constitution that requires us to set aside the judgments of guilt (which are free of error so far as the Court tells us); to cloak the properly-convicted appellants in the presumption of innocence; to require the State to marshal evidence that is years and years old; and to require the sizeable expenditure of time and money that attends a capital trial. If all this is to happen, it must be because of state law, and in these cases it is state law that is wrongly applied.

As the Court points out, we "may reform or correct [a] judgment *as the law and the nature of the case may require*." Texas Code of Criminal Procedure, Article 44.24(b) (emphasis supplied). In *Ocker v. State*, 477 S.W.2d 233 (Tex.Cr.App.1972), we held that the grant of Article 44.24(b) was the limit of our power, and that "the law and nature" of that case would not permit us to assess punishment when the death penalty had been voided by *Witherspoon* error.

What the Court fails to appreciate today is that "the law and nature of the case" are different today than they were when *Ocker* and *Whan v. State*, 485 S.W.2d 275 (Tex.Cr. App.1972), were decided.

At that time the punishment for murder was death or confinement for life or for any term of years not less than two. 1927 Texas General Laws, ch. 274, Sec. 1, Texas

Revised Penal Code of 1925, Art. 1257 (repealed in 1973). The punishment for rape was death or confinement for life or for any term of years not less than five. Texas Revised Penal Code of 1925, Art. 1189 (repealed in 1974). We denied the State's motion to reform the punishment, saying (*Ocker v. State,* 477 S.W.2d at 290):

> "Thus . . . the alternative punishment is not fixed by law, but encompasses a wide range. If this Court were to reduce the sentence to life imprisonment we would be assessing punishment as we saw fit, not as required by law. We would be performing a function which properly belongs to the jury. If our statutes provided for a fixed punishment in lieu of the death penalty, the situation would be closely akin to the cases in which the punishment is absolutely fixed, and in which· this Court has assessed punishment."

In 1973 new capital punishment statutes were enacted. The punishment for the only capital offense (capital murder) is death or confinement for life. If the death penalty be unavailable (as it was, in the constitutional sense, in these cases), there is only one, fixed penalty remaining: confinement for life. The law and nature of the case now permits us to render the only possible punishments that these juries could have assessed, in light of their being selected in violation of *Witherspoon* : confinement for life. This would not be a commutation or an assessment of punishment; it would be the rendition of the only punishment that was possible on the valid judgment of guilt. No "direct[ion] of a new trial before a different jury on the issue of punishment" is required; there is no issue of punishment left in the case, for only one punishment was constitutionally possible.

Today we are indeed following "the consistent policy of this Court that although the error is to penalty alone, the cause must be reversed for an entirely new trial." The Court is so consistent that it fails to notice

that the reasons for the policy no longer obtain in these cases.*

In *Grijalva v. State,* 614 S.W.2d 420, decided today, the Court suggests a somewhat different reason for reversing the untainted judgment of guilt:

> "Even though the error affects only the death penalty, it is not such error as would preclude the State from seeking the death penalty on a retrial. We therefore are unable to reform the punishment to life and affirm."

This seems to me to be foreign to our role as an appellate court under the Texas Constitution. As the Court holds in *Evans,* above, we are bound to do what "the law and nature of the case may *require.*" Texas Code of Criminal Procedure, Article 44.-24(b). Yet the court frankly admits in *Grijalva* that it is giving more relief than the error requires; it is reversing an untainted judgment of guilt. It does this because the error does not "preclude the State from seeking the death penalty on a retrial." That is to say, the Court is giving relief to the State in the form of another trial and another chance at the death penalty. This is in effect giving the State an appeal in a criminal case, which is forbidden by Article V, Section 26, of the Texas Constitution.

The Court is correct in noticing the errors in jury selection in these cases, but it grants the wrong relief. I dissent.

## CONCURRING OPINION TO DENIAL OF STATE'S MOTION FOR REHEARING WITHOUT WRITTEN OPINION

McCORMICK, Judge.

I concur in the majority's action in remanding this case for a new trial. However, for the reasons set forth in my dissenting opinion in *Pierson v. State,* 614 S.W.2d 102 (this date decided), I must note that the correct result is reached here for the wrong reasons. As pointed out in *Pierson,* this Court has authority to reform the judgment to life imprisonment, but since

---

* On the subject of consistency, see the epigram in *McElwee v. State,* 589 S.W.2d 455, 455 (Tex. Cr.App.1979) (Onion, J.).

the State has requested to retry appellant and again seek the death penalty, I concur in the reversal and remand.

DALLY, J., joins.

## CONCURRING OPINION TO OVERRULING STATE'S MOTION FOR REHEARING WITHOUT WRITTEN OPINION

TEAGUE, Judge.

I concur in the majority's action for the reasons set forth in my Concurring Opinion to Overruling State's Motion for Rehearing Without Written Opinion in *Pierson v. State,* 614 S.W.2d 102 (1981).