[No. B082503. Second Dist., Div. Seven. Jan. 11, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
REGGIE ROBINSON, Defendant and Appellant.

## COUNSEL

Harvey L. Goldhammer, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Roy C. Preminger and Karen B. Chappelle, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WOODS (Fred), J.**—Reggie Robinson (appellant) was charged with and convicted (by jury) of arson. (Pen. Code,[1] § 451, subd. (b).) We reverse the judgment because the district attorney withheld exculpatory evidence (*Brady v. Maryland* (1963) 373 U.S. 83, 87 [10 L.Ed.2d 215, 218, 83 S.Ct. 1194]; § 1054.1, subd. (e)) and committed misconduct, and the trial court erroneously excluded defense evidence.

### FACTUAL BACKGROUND

In our Discussion we provide additional factual detail. A simple summary suffices here.

On July 31, 1993, at 4 a.m., Jose Arellano[2] and his family of eight were asleep in their house at 4063 S. San Pedro Street in Los Angeles when the front of their house started burning. They all escaped by the back door.

Arson investigator Jorge Aquin, a Los Angeles City Fire Department officer for 16 years and an arson investigator for 5, arrived at the scene an hour later and immediately began his investigation. He determined the origin of the fire to be the front porch and the source, a gasoline accelerant. He interviewed several witnesses and made handwritten, contemporaneous notes of their names, addresses, if any, and statements. Among the witnesses

---

[1]Statutory references, unless otherwise noted, are to the Penal Code.

[2]The witness, who testified through an interpreter, stated his name was Jose Luis Arellano *Garcia*. But both counsel addressed him as Mr. Arellano and the witness stated his brother's last name was Arellano.

he interviewed were Raymond Dukes, Beatrice Scott, and Mary Dixon. In investigator Aquin's presence, his partner interviewed witness Mark Lytle.

Mary Dixon, who lived across the street from the Arellano residence, testified she saw appellant and his friend Ny Brown[3] together near the Arellano residence. Both lived in the neighborhood and she knew them well. She saw appellant approach the Arellano front porch, and holding a small bottle or jar, pour a liquid on the porch couch. Ny Brown then lit a newspaper he was holding, walked to the porch, and ignited the couch. Fire erupted. She remained in her bedroom and watched the fire.

Mark Lytle, a defense witness, testified he turned the corner at 40th Place onto San Pedro Street, in front of Mary Dixon's house, and saw Ny Brown light a newspaper, walk to the Arellano porch, and ignite the sofa chair. He had a clear view of San Pedro Street and did not see appellant anywhere.

Beatrice Scott was available at trial but did not testify.

Raymond Dukes was not available at trial because the defense only learned about him near the end of trial and could not locate him.

## Discussion

1. *The district attorney withheld exculpatory evidence.*

■ The prosecutor has a constitutional (*Brady* v. *Maryland, supra,* 373 U.S. 83, 87 [10 L.Ed.2d 215, 218]) and statutory (§ 1054.1, subd. (e))[4] duty to disclose to the defense any exculpatory evidence. "The prosecution's duty to disclose 'extends to all evidence that reasonably appears favorable to the

---

[3] Also called "Nyles." He was a juvenile, not a codefendant, and not a party to this appeal.

[4] The section reads:

"The prosecuting attorney shall disclose to the defendant or his or her attorney all of the following materials and information, if it is in the possession of the prosecuting attorney or if the prosecuting attorney knows it to be in the possession of the investigating agencies:

"(a) The names and addresses of persons the prosecutor intends to call as witnesses at trial.

"(b) Statements of all defendants.

"(c) All relevant real evidence seized or obtained as part of the investigation of the offenses charged.

"(d) The existence of a felony conviction of any material witness whose credibility is likely to be critical to the outcome of the trial.

"(e) Any exculpatory evidence.

"(f) Relevant written or recorded statements of witnesses or reports of the statements of witnesses whom the prosecutor intends to call at the trial, including any reports or statements of experts made in conjunction with the case, including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the prosecutor intends to offer in evidence at the trial."

accused, not merely to that evidence which appears likely to affect the verdict.' (*People* v. *Morris* (1988) 46 Cal.3d 1, 30, fn. 14 [249 Cal.Rptr. 119, 756 P.2d 843].) When the prosecution suppresses evidence which is material to guilt or punishment, regardless of whether that suppression is intentional or inadvertent, the defendant's due process rights are abridged. (*Brady* v. *Maryland* (1963) 373 U.S. 83, 87 [10 L.Ed.2d 215, 218, 83 S.Ct. 1194]; *People* v. *Ruthford* (1975) 14 Cal.3d 399, 406 [121 Cal.Rptr. 261, 534 P.2d 1341])." (*People* v. *Jackson* (1991) 235 Cal.App.3d 1670, 1676 [1 Cal.Rptr.2d 778].)

The scope of a prosecutor's disclosure duty includes not just exculpatory evidence in *his* possession but that possessed by investigative agencies to which he has reasonable access. As the California Supreme Court recently noted: "California courts long have interpreted the prosecutorial obligation to disclose relevant materials in the possession of the prosecution to include information 'within the possession or control' of the prosecution. [Citation.] In *Pitchess* v. *Superior Court*, [(1974)] 11 Cal.3d 531, 535 [113 Cal.Rptr. 897, 522 P.2d 305], we construed the scope of possession and control as encompassing information 'reasonably accessible' to the prosecution. In *Engstrom* v. *Superior Court* (1971) 20 Cal.App.3d 240, 243 [97 Cal.Rptr. 484] (disapproved on other grounds in *Hill* v. *Superior Court*, [(1974)] 10 Cal.3d [812] at p. 820 [112 Cal.Rptr. 257, 518 P.2d 1353]), the court held that materials discoverable by the defense include information in the possession of all agencies (to which the prosecution has access) that are part of the criminal justice system, and not solely information 'in the hands of the prosecutor.' (20 Cal.App.3d at p. 244.) In *People* v. *Coyer* (1983) 142 Cal.App.3d 839, 843 [191 Cal.Rptr. 376], the court described information subject to disclosure by the prosecution as that 'readily available' to the prosecution and not accessible to the defense." (*In re Littlefield* (1993) 5 Cal.4th 122, 135 [19 Cal.Rptr.2d 248, 851 P.2d 42].)

When exculpatory evidence involves an eyewitness to the crime, what must be disclosed is not just the witness's identity "but all pertinent information which might assist the defense to locate him." (*Eleazer* v. *Superior Court* (1970) 1 Cal.3d 847, 851 [83 Cal.Rptr. 586, 464 P.2d 42].)

■ The district attorney did not fulfill his duty to disclose to the defense exculpatory evidence. Although eyewitness Mark Lytle was interviewed in the presence of arson investigator Aquin almost immediately after the fire, the district attorney *never* disclosed his identity to the defense.[5] As the defense attorney represented to the trial court, "I found Mr. Lytle on my

---

[5]From the record, it is not clear what the prosecutor knew about Mark Lytle and Raymond Dukes and when he knew it. However, according to the Uniform Crime Charging

own." Although the record fails to contain any excuse or justification for the district attorney's dereliction there was no prejudice since Mr. Lytle was located by and testified for the defense.

■ As to eyewitness Raymond Dukes the facts are otherwise. He also was interviewed immediately after the fire. Arson investigator Aquin interviewed him and took contemporaneous notes of the interview. But defense counsel learned of Mr. Dukes' existence only indirectly and belatedly.

Indirectly because during his cross-examination of Mark Lytle the prosecutor referred to an interview summary, the defense attorney requested a bench conference, the prosecutor disclosed he did have a Mark Lytle interview summary never furnished to the defense, and, at day's end, the trial court ordered the prosecutor to obtain copies of investigator Aquin's notes and provide them to defense counsel the next day, Friday, November 5, 1993, when the trial would be in recess. It was from these notes that defense counsel learned of Raymond Dukes.

This is defense counsel's undisputed description of how she obtained the notes: "On Friday, defense counsel made several calls to the prosecutor, and [the] prosecutor . . . stated the notes had not yet arrived, even though defense counsel saw the arson investigator on the first floor at lunch time. Defense counsel was suffering from the aftermath of the flu and asked the prosecutor to turn the notes over as soon as possible. The defense counsel called again and [the] prosecutor . . . stated that he just received the notes and would deliver them to the 19th floor. The prosecutor did not arrive. Defense counsel finally located the prosecutor in a courtroom. The prosecutor claimed to have left the notes in his office. Defense counsel finally called Jeff Ramseyer, [the] prosecutor['s] . . . supervisor, to ask him to find the notes so counsel could pick them up. Mr. Ramseyer was extremely cooperative and called back, stating that the notes were in the courtroom with [the prosecutor]. Defense counsel went down to the courtroom where [the prosecutor] refused to acknowledge counsel or give her the notes and began to leave the courtroom. When defense counsel asked again for the notes, [the

Standards (1974 California District Attorneys Association) "The prosecutor, before deciding whether to charge should insist on as complete an investigation as is reasonably feasible." (*Id.* at p. 14.) Further, "The prosecutor, based on a complete investigation *and on a thorough evaluation of all pertinent data readily available to him*, should be satisfied that the evidence shows the accused is guilty of the crime to be charged." (*Ibid.*)

The Los Angeles County District Attorney's Office received federal grant funds to promulgate this charging manual. One of its deputies was named executive director of the project. (U. Crime Charging Standards, *supra*, at p. i.) District attorneys throughout California participated in the creation of the Uniform Crime Charging Standards and the project was endorsed by the California District Attorneys Association. (*Id.* at p. ii.)

prosecutor] stated they were on counsel table, forcing counsel to hunt through the documents on the table. At this point, it was very late Friday afternoon, and defense counsel took the notes home, not expecting to find a prior unknown defense witness."

Belatedly, because not learning of Raymond Dukes until over three months after the arson investigator interviewed him, defense counsel was unable to locate Raymond Dukes. On Monday morning, November 8, 1993, defense counsel moved for a "*Brady*" dismissal. The trial court denied the motion but gave defense counsel the remainder of the morning to locate Raymond Dukes. At 1:30 p.m. defense counsel informed the trial court Mr. Dukes was not in county jail and could not be located at his last known "residence," the public park.

When the trial court indicated its intention to give defense counsel the remainder of the afternoon to locate Mr. Dukes, the district attorney objected, stating, "I believe there was no discovery motion that was filed with me,[6] I think at this time it would be untimely [to] ask[ ] for a continuance."

To the prosecutor's objection the trial court responded as follows:

"THE COURT: There is an obligation on the prosecution to turn over any information that may be favorable to the defense, discovery motion or not. [¶] This individual certainly would fall within that criteria [*sic*].

"I have seriously considered granting a mistrial in this case in light of this new information.

"However, I'm taking that under advisement and will allow Miss Richards [defense counsel] further time to try to locate this individual.

"This individual doesn't fall within the other persons associated with Mr. Lytle. This individual is specifically mentioned by name and description in the investigator's notes.

"I cannot conceive how you can stand there and tell me that you object to a continuance for the defense to locate a witness who is an eyewitness that may provide exculpatory evidence for the defense.

"It's beyond me."

The next morning, Tuesday, November 9, 1993, defense counsel informed the trial court she had personally spoken to Raymond Duke's father who

---

[6]Defense counsel had provided discovery to the prosecutor's supervisor.

lived a few blocks from the arson scene. He said about a week ago his son had left for someplace in Memphis, Tennessee.

Defense counsel, having been unable to locate Raymond Dukes, moved for a dismissal. The motion was denied. Both sides rested and the case went to the jury that same day.

As with eyewitness Mark Lytle, the record fails to contain any excuse or justification for the district attorney's too late disclosure to the defense of Raymond Dukes. If the district attorney's dereliction was prejudicial appellant is entitled to a new trial. In the trial hearing, the district attorney sought to prove there was no prejudice. He called investigator Aquin who testified he was now sure Mr. Dukes had told him he, Mr. Dukes, had not seen *anyone* start the fire.

This testimony contradicts what investigator Aquin told the trial court two months earlier when the trial court asked: "Investigator Aquin, from your recollection of this interview [with Raymond Dukes], did this person tell you that he observed the arson take place and that there was only one individual that caused the arson?"

Investigator Aquin responded, "What I recollect is he mentioned the same thing that Lytle and Scott mentioned: That they had seen Ny walk across the street from in front of them with an ignited newspaper and dropped it on the couch." When the trial court asked, "Was there any mention of another individual?," investigator Aquin answered, "At the time that's the only mention he made, was that one—the one kid, that's all that they had seen."

Investigator Aquin's testimony is also difficult to reconcile with his contemporaneous notes which, under the name "Raymond Dukes," initially state "saw no one," but then state: "Walking down street, guy set porch on fire, fire got going into attic, Notified people, attempted to remove Bars,[7] 'Arsonist' solo type person, 16-15 5'6"-5'7", Black male 'youngster', Hangs out in area."

The trial court did not attempt to resolve this conflict[8] and we are unable to do so. On the record before us there is a distinct possibility that had Raymond Dukes been called as a witness he would have testified that only Ny Brown, not appellant, caused the fire. We cannot say the jury would have

---

[7]The victims' residence had bars over the front windows.

[8]In denying appellant's new trial motion the trial court only made this reference to Mr. Dukes: "And I don't find the reason to grant the motion for a new trial based on potential testimony of that witness. And that was Mr. Dukes."

disbelieved both Mark Lytle and Raymond Dukes. We find the withholding of this exculpatory evidence by the district attorney prejudicial.

## 2. *The trial court erroneously excluded defense evidence.*

■ Over defense objection, the trial court admitted the testimony of Mary Dixon that three nights before the subject arson she saw Ny Brown and appellant set fire to a car parked in front of the residence they burned three nights later. The trial court instructed the jury they could consider this evidence in determining identity. (CALJIC No. 2.50.)

Although there was nothing particularly distinctive about either the subject arson or the earlier car arson, the trial court properly admitted this car arson evidence because it satisfied the stringent "identity" standards promulgated by *People* v. *Ewoldt* (1994) 7 Cal.4th 380, 394 [27 Cal.Rptr.2d 646, 867 P.2d 757]. It did so because the two arsons shared "a mark whose distinctive nature tends to differentiate those offenses from other" arsons. (*People* v. *Haston* (1968) 69 Cal.2d 233, 249 [70 Cal.Rptr. 419, 444 P.2d 91]. See also *People* v. *Cavanaugh* (1968) 69 Cal.2d 262 [70 Cal.Rptr. 438, 444 P.2d 110].) That "mark" was Ny Brown "and his conjunction with defendant in [the] earlier [arson], . . . [which] supports the inference that defendant and not some other person was his accomplice in [the] charged offense[ ]." (*People* v. *Haston*, *supra*, 69 Cal.2d at p. 249.)

■ To rebut this inference the defense offered the testimony of Mark Lytle he saw Ny Brown set fires alone, without appellant, on two prior occasions. The trial court excluded the evidence. The trial court erred.

The proferred evidence was relevant and admissible. If believed, it weakened the inference that because appellant aided Ny Brown in burning the car he aided Ny Brown in burning the subject residence. It showed that only sometimes appellant aided Ny Brown in setting fires; other times Ny Brown set them alone and therefore Ny Brown may have set the subject fire alone.

## 3. *The district attorney committed misconduct.*

■ Before defense counsel called Mark Lytle to the stand she informed the trial court he was in custody and indicated that in order to insure the jury would not be prejudiced by his being in custody, she requested Mark Lytle be brought into the courtroom before the jury entered. The prosecutor had no objection and the trial court agreed.

However, the prosecutor conducted the following cross-examination of Mark Lytle:

"Q. Have you talked to the defendant at all about this case?

"A. Have I talked to him at all?

"Q. Yes, about their [*sic*] case.

"A. Yeah, I have talked to him.

"Q. *In custody?*

"A. In custody?

"Q. Yes.

"A. Yes.

"Q. When was that?

"A. You know, we talk all the time.

"Q. *Are you in the same hold?*

"[Defense counsel]: Objection.

"THE COURT: Sustained. [¶] Counsel, would you approach with the reporter." (Italics added.)

The trial court refused to strike the answer and erroneously stated the witness had only been asked if the "conversation" (with appellant) was "in custody," not whether Mr. Lytle was in custody. The trial court did not want to "focus" the jury's attention on the improper "in custody" question and gave no admonition to the jury.

We find the "in custody" and "Are you in the same hold?" questions by the prosecutor constituted misconduct. The misconduct was not cured or ameliorated by the trial court. It may well have tilted the credibility balance against Mr. Lytle and in favor of Mary Dixon.[9]

The prosecutor committed other misconduct also involving Mark Lytle. On direct examination defense counsel elicited that he (Mark Lytle) had

---

[9]Her credibility was vulnerable: she failed to report the July 27, 1993, car arson; she described the burned car as a red and black Pontiac (it was a blue Camaro); she testified she saw appellant and Ny Brown set fire to her neighbor's house—where nine people were asleep—and did nothing but watch as the house burned; she testified appellant, while on his bicycle, held a glass container and, still on his bicycle, poured its contents onto a porch couch; she denied talking to her neighbor Judy Jamerson about the fire, but Mrs. Jamerson testified

suffered a felony conviction. Before cross-examination, the trial court made clear the prosecutor was to ask no further questions concerning Mr. Lytle's felony conviction. The prosecutor violated the trial court's order and asked, "Okay. [¶] And you have already been asked about having a prior conviction. Was that a prior conviction for receipt of stolen property?"

At the bench, the trial court said to the prosecutor: "Maybe you're not listening, maybe I'm not saying it clear enough, but I said you are to leave it with the fact that he had a prior conviction for a felony."[10]

Again the trial court failed to admonish the jury.

■  Finally, there was the prosecutor's argument to the jury. Section 1093, subdivision (e) permits the prosecutor to open the argument and to close the argument. It does *not* permit the prosecutor to give a perfunctory (three and one-half reporter transcript pages) opening argument designed to preclude effective defense reply, and then give a "rebuttal" argument— immune from defense reply—10 times longer (35 reporter transcript pages) than his opening argument. (See generally, *People* v. *Hill* (1967) 66 Cal.2d 536, 564-565 [58 Cal.Rptr. 340, 426 P.2d 908]; *People* v. *Bandhauer* (1967) 66 Cal.2d 524, 531 [58 Cal.Rptr. 332, 426 P.2d 900].) That is what occurred here.

We conclude that because the district attorney withheld exculpatory evidence and committed misconduct and because the trial court erroneously excluded defense evidence, appellant was denied a fair trial.

### DISPOSITION

The judgment is reversed.

Lillie, P. J., and Johnson, J., concurred.

A petition for a rehearing was denied February 1, 1995, and respondent's petition for review by the Supreme Court was denied April 12, 1995.

---

that shortly after the fire she did talk to Mary Dixon about it; Mrs. Jamerson also testified that Mrs. Dixon was known in the community as a fabricator.

[10]The prosecutor neither claimed ignorance nor offered an apology. He stated: "I can't go into the actual offense? [¶] The reason I wanted to is because I think the jury is entitled to hear it's a felony involving a crime of moral turpitude. [¶] That's all I'm trying to do."