[No. E050775. Fourth Dist., Div. Two. May 20, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
MELVIN LEE HUNT, Defendant and Appellant.

**COUNSEL**

Richard J. Moller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Ronald Jakob and Heidi T. Salerno, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**RAMIREZ, P. J.**—A jury convicted defendant, Melvin Lee Hunt, of three counts of second degree robbery, during which defendant acted as a principal and the crime benefitted a street gang (Pen. Code, § 12022.53, subd. (e)),[1] and which benefitted a street gang (§ 186.22, subd. (b)). The jury also convicted defendant of active participation in a street gang (§ 186.22,

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

subd. (a)). He was sentenced to prison for 13 years eight months and appeals, claiming admission of gang evidence violated his due process right to a fair trial, there was insufficient proper evidence to support the gang enhancements and sentencing error occurred. We reject defendant's contention, save his assertion that the sentencing court erred in not staying his sentence for active participation in a street gang. We therefore order the trial court to stay this sentence, thereby reducing his total sentence, reflect these facts in the abstract of judgment and minutes of the sentencing hearing, and correct other errors in those documents. Otherwise, we affirm.

## FACTS

On May 17, 2009, defendant drove his companion, a fellow gang member, to a fast-food restaurant where the latter held up, at gunpoint, three of its employees. Other facts will be discussed as they are relevant to the issues raised.

## ISSUES AND DISCUSSION

1. *Evidence Supporting the Gang Enhancement Findings*

   a. *Testimony by the Prosecution's Gang Expert*

The prosecution's gang expert testified that fear, intimidation and respect are "everything" in the gang culture and gangs want to be perceived as the meanest and toughest and want others to fear them, so they will be respected. Gang members or potential gang members have to do something to prove themselves to the gang and this can range from selling drugs to committing a robbery to shooting someone. Increasing the level of violence and committing crimes can benefit a gang in that more violent acts get more attention in the public and garner more respect.

The expert testified that he became familiar with the Gateway Posse Crips (hereinafter, Gateway) in 1993 and he gave a history of the gang. He described the boundaries of their turf. He said that Gateway uses guns to conduct business and protect themselves to the same extent that police officers do. He went on, "They want to be out there, that their name wants to be known, they're out there doing robberies, doing shootings, running around with guns, all that violence plays into who they are." He said that selling marijuana and rock cocaine are the most common crimes committed by Gateway members but "street robbery is very, very common." He said that robberies and being a felon in possession of a firearm are among their primary activities, but conceded that he could recall only one gang member being convicted of robbery around the time of these crimes. He said that

people who go to Gateway's turf to buy drugs when the gang does not have drugs to sell or does not want to sell will be robbed and beaten with rocks. He said Gateway members also commit armed robberies and gas station, liquor store and fast-food-restaurant robberies. He added that even if a member keeps the proceeds from a robbery for himself, the gang can be benefitted because the public will become aware of the crime, which will cause fear and intimidation, as the information that the robber is a member of the gang will also become public. However, he conceded that if the robber does not tell the victim that he is a gang member or wear distinctive gang clothing, it is possible the victim will not know the robber is a gang member. He said that Gateway members wore blue clothes and there were over 100 members on the day of the crimes. He opined that on that day, defendant was an active member of the gang, having knowledge of the gang's criminal activities, and he explained why. He reported that defendant's companion had admitted membership in the gang on October 30, 2007, and on May 20, 2009.[2] He said that the companion had "a history of getting caught with guns[,] . . . of [committing] robberies [and] . . . assault with deadly weapons . . . . With that kind of criminal background, that kind of criminal experience, he's looked upon with an elevated status in that gang."

The expert was given a hypothetical in which self-admitted Gateway members are stopped in a car after a masked man robs three employees at a Del Taco and a dark blue ski mask, dark beanie and long-sleeved shirt, matching the description of that worn by the robber, and a gun are found in the car and one of the men admits that the proceeds of the robbery would be used to pay for parking tickets. He opined that the robbery would be for the benefit of the gang in that, "[I]f someone . . . does a crime . . . and they're doing it for . . . themselves because they want money to go get high or drink, or buy themselves a gun for protection, once they get into that gangster lifestyle, . . . everything they do is synonymous with the gang at that point. Whether they're going out there with a specific reason of doing the robbery for their personal gain, as long as people know that the individual is a gang member from this specific gang, they're going to talk about how so and so from whatever gang it may be, did a robbery.[3] That gang is going to . . . reap the benefits of that robbery in the gang community. They're going to get more respect and more fear."

He opined that in the hypothetical, the robbery would be at the direction of the gang because "The person who's gone in and done the robbery . . . may have more experience. Maybe more well versed in how to pull the robbery

---

[2] Defendant, himself, told police that his companion was a gang member.

[3] However, as already stated, he conceded that if the robber did not tell the victim he was a gang member and did not wear distinctive gang clothing, it is possible the victim would not know the robber was a gang member.

off. The guy that's the driver, is like, . . . [']I want to go and help you. I want to get money out of this but, . . . I'm afraid of guns. I don't want to point no gun at somebody. I may kill somebody. I'll drive the car.['] So the other guy says, ['A]ll right, get in the car. Let's go.['] . . . The more experienced veteran member of the gang . . . is . . . calling the play . . . . [']You're going to park right here. I'm going to go in this door. I'll be in there for two minutes. If I'm not out in two minutes, come looking for me['] or whatever direction he may give him because he may be the more experienced one. So he's directing the operation."

He opined that in the hypothetical, the robbery would be in association with a gang in that, "You've got two gang members from the same gang going to do a crime. . . . [T]hey're associated with each other. It's going to benefit the gang."

He opined that in the hypothetical, the robbery was done to promote, further or assist criminal conduct by Gateway members because "[G]ateway is notorious for dope sales and robberies.[4] . . . [I]t's promoting what their gang is all about. Everyone knows, you go to [G]ateway to buy dope. If you don't get dope, chances are you can get robbed. It's common knowledge on the street, you're going to get beat with rocks . . . ."

He conceded that if defendant committed these crimes just to get money to pay tickets "with no mitigating factors,"[5] the robberies would not be gang crimes. He said if two gang members rob a fast-food restaurant, it would benefit and be at the direction of the gang. However, at the preliminary hearing, he testified that this would "depend . . . on the dynamics" and a case-by-case determination would have to be made. When confronted with this, he altered his statement, saying it would depend on the circumstances and he could not say across the board that it would. However, he said that if two gang members commit a crime together, they commit it in association with a gang. He added that even if the victim does not know that the robber is a gang member, the gang still benefits because the perpetrators will tell at least one person in the neighborhood what they have done and it will get around the neighborhood and the perpetrators will gain respect and elevated status due to their commission of the crime and the gang will get status in the community. He added that even if the perpetrators are arrested and incarcerated within minutes of the robbery, they will gain respect within the gang because "[T]he only thing you can be lower than anything in this world is a rat or a snitch. If [they] go to jail and they don't . . . talk about it, . . . then they do gain respect for keeping their mouth shut."

---

[4] However, as already stated, he conceded that around the time of these crimes, only one member of Gateway was convicted of robbery.

[5] He did not specify what these mitigating factors might be.

b. *Due Process*

Defendant here contends that the admission of the expert's testimony "that . . . gang members who commit crimes are almost always benefitting their gang . . . [by] enhanc[ing its] reputation . . . and instilling fear" violated his due process right to a fair trial. We disagree.

First, defendant's assertion unfairly summarizes the expert's testimony about how the commission of these robberies benefitted Gateway. He testified that robberies were among Gateway's primary activities and members robbed fast-food restaurants. He cited defendant's companion as an example of someone in Gateway who had elevated status because he had a history of having guns and committing robberies and assaults with a deadly weapon. He said that even if a member kept the proceeds of a robbery for himself, and the victim did not know the robber was a member of Gateway, the gang would still benefit because those involved in the robbery would tell someone else, it would get around the neighborhood, the perpetrators would get elevated status in the gang, the gang would get elevated status and respect in the community. The expert did not testify, as defendant asserts, that gang members who commit crimes are almost always benefiting the gang. His testimony was specifically addressed to the hypothetical given, which was based on the facts in this case. He made no generalities.

■ Our task is to determine whether the admission of the expert's testimony concerning *how these crimes benefitted Gateway* violated defendant's due process right. The admission of evidence results in a due process violation only if it makes the trial fundamentally unfair. (*People v. Partida* (2005) 37 Cal.4th 428, 439 [35 Cal.Rptr.3d 644, 122 P.3d 765].) "Only if there are *no* permissible inferences the jury may draw from the evidence can its admission violate due process. Even then, the evidence must 'be of such quality as necessarily prevents a fair trial.' [Citations.] Only under such circumstances can it be inferred that the jury must have used the evidence for an improper purpose." (*Jammal v. Van de Kamp* (9th Cir. 1991) 926 F.2d 918, 920.)

In *People v. Albarran* (2007) 149 Cal.App.4th 214, 227, 230 [57 Cal.Rptr.3d 92] (*Albarran*), the appellate court concluded that such a due process violation occurred when highly inflammatory gang evidence, some completely unrelated to the charged offenses, was admitted *solely* to prove motive and intent for them,[6] because that evidence had no bearing on those issues. The appellate court concluded that the *only* evidence to support the prosecution's theory that the motive for the charged crimes was the defendant's

---

[6] In *Albarran*, the trial court had granted a motion for a new trial on the basis that there was insufficient evidence to support the jury's findings that the charged offenses were committed for the benefit of a gang, but concluded that admission of the gang evidence was relevant to

desire to earn respect and enhance his reputation within his gang was the fact that the defendant was a gang member. (149 Cal.App.4th at p. 227.) The court rejected the gang expert's *speculation* that people attending a party in a house at which the defendant and a companion fired shots would know the shooters, and, presumably, know that defendant was a gang member[7] as a basis for the prosecution's theory. (*Id.* at p. 221.)

■ Here, in contrast, the robberies were alleged to have been committed to benefit Gateway or in association with or at the direction of Gateway, therefore the gang expert's testimony was relevant. Additionally, defendant was charged with the substantive crime of active participation in a gang, and the testimony was relevant to this offense.[8] For reasons explained below, the gang evidence created permissible inferences regarding the gang enhancements, the truth of which the prosecution was obliged to prove beyond a reasonable doubt. Therefore, there was no due process violation.

## 2. *Sufficiency of the Evidence*

In *People v. Albillar* (2010) 51 Cal.4th 47, 50 [119 Cal.Rptr.3d 415, 244 P.3d 1062] (*Albillar*), three fellow gang members were convicted, inter alia, of forcible rape in concert and forcible sexual penetration in concert. In rejecting the defendants' contention that there was insufficient evidence to support the jury's implied finding that the sexual offenses were committed in association with their gang, the Supreme Court said, "[The] gang [expert] . . . testified that status and respect were two of the most important elements of gang membership. Status can be earned by 'being with other . . . gang members, committing crimes . . .' . . . . Respect can likewise be earned by committing crimes 'with other . . . members so that it's recognized within the group that this person is contributing to the gang or is . . . showing his . . . interest in the gang.' [¶] As [the expert] explained, gang members choose to commit crimes together because 'it increases their [chances of] success [in] completing the crime. . . . [I]t bolsters each other's confidence in the commission of the crime. It serves as somewhat of a training . . . for . . . younger gang member[s] to watch the actions and the level of participation of more senior gang members. They can trust . . . each other's loyalties. They can handle contingencies that may arise during the . . . crime that they did not plan for initially. They can multi-task during the . . . crime.' [¶] [The expert] explained that there were further benefits when gang members worked

---

prove motive and intent for the charged offenses, and, therefore, denied a new trial as to them. (*Albarran, supra*, 149 Cal.App.4th at pp. 214, 217, 222.)

[7] There is no mention in the opinion about the identity of the other shooter or whether he was a member of the defendant's gang or any other gang.

[8] Defendant does not contend that this evidence was not relevant to the charged offense of actively participating in a gang.

together: '[O]ne of the most important things . . . is the value of one gang member witnessing another gang member committing the crime because that gang member can share it with others or keep it within the group and bolster this person's status by their level of participation in the crime . . . .' By committing crimes together, . . . gang members increase their status not only among those participating in the crimes, but also among the entire gang when fellow participants 'relay it' to other gang members. [¶] Committing a crime with fellow gang members also enables the participants to rely on intimidation, which is 'one of [the gang's] mainstream daily objectives in furthering their gang interest.' In addition, the bonds within the gang 'would keep people from ratting on their own gang' to the police about the crimes . . . ." (*Id.* at pp. 60–61.)

The Supreme Court went on to tie in the facts of the case with the gang expert's testimony thusly: "Because each defendant was a member of the [gang], he could and did rely on the others' cooperation in committing the offenses . . . . Defendants knew, because of the nature of the gang, that no one would be a 'rat,' which would be 'one of the worst things . . . the gang can have within itself.' . . . Defendants also knew that fear of the gang would prevent [the victim] from reporting the incident to the police—and, indeed, in the days after[]" the crimes, two friends of other gang members "warned [the victim] and her family that [she] 'would suffer with her life' if they contacted the police." (*Albillar, supra,* 51 Cal.4th at p. 61.) The Supreme Court concluded, "Defendants not only actively assisted each other in committing these crimes, but their common gang membership ensured that they could rely on each other's cooperation in committing these crimes and that they would benefit from committing them together. They relied on the gang's internal code to ensure that none of them would cooperate with the police and on the gang's reputation to ensure that the victim did not contact the police. We therefore find substantial evidence that defendants came together *as gang members* to attack [the victim] and, thus, that they committed these crimes in association with the gang." (*Id.* at pp. 61–62.)

At this point in the opinion, the California Supreme Court cited, inter alia, footnote 7 of this court's opinion in *People v. Ochoa,*[9] in which we stated, as is pertinent, "[T]he fact . . . that the defendant had a fellow gang member in the stolen vehicle with him would support a finding that he acted in association with the gang. (*People v. Morales* (2003) 112 Cal.App.4th 1176, 119[8] [5 Cal.Rptr.3d 615] . . . .)" (*People v. Ochoa* (2009) 179 Cal.App.4th 650, 661, fn. 7 [102 Cal.Rptr.3d 108] [Fourth Dist., Div. Two].)

The Supreme Court also cited, in support of its conclusion, *Morales,* in which this court rejected the defendant's assertion that reliance on evidence

---

[9] This is *Albillar*'s *only* citation to *Ochoa* regarding this issue.

that one gang member committed a crime in association with another gang member is circular, holding, "[I]t is conceivable that several gang members could commit a crime together, yet be on a frolic and detour unrelated to the gang. Here, however, there was no evidence of this. Thus, the jury could reasonably infer the requisite association from the very fact that defendant committed the charged crimes in association with fellow gang members." (*People v. Morales, supra*, 112 Cal.App.4th at p. 1198.)

█ The Supreme Court also cited *People v. Martinez* (2008) 158 Cal.App.4th 1324, 1332 [70 Cal.Rptr.3d 680], in which Division Three of this court held, "Defendant, [an admitted gang member], committed the crimes with . . . another admitted member. . . . [The gang expert] testified this evidence showed defendant committed the robbery in association with the gang. The elements of the gang enhancement may be proven by expert testimony. (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1047–1048 [16 Cal.Rptr.3d 880, 94 P.3d 1080].)"

Aside from the victim's testimony in *Albillar* that the defendants cooperated with each other to commit the offenses and the evidence that she and her family were threatened with retaliation if they reported to police, *all the remaining evidence supporting the Supreme Court's finding of substantial evidence that the crimes were committed in association with the gang came solely from the gang expert*. In fact, in her concurring and dissenting opinion in *Albillar*, Justice Werdegar observed, "The *only* evidence presented on the relationship of the offenses to the gang was the opinion of [the gang expert] . . . ." (*Albillar, supra*, 51 Cal.4th at p. 7 (conc. & dis. opn. of Werdegar, J.), italics added.)

Here, likewise, defendant admitted to the police that he and his companion came together to commit the robbery—he as the driver and his companion as the robber. He also told the police that his companion was three years older than he was. He told them that he had not been the driver in any other robberies. He said that his companion directed him to go to the fast-food restaurant. The expert testified that the companion had an extensive history of having guns and committing robberies and assaults with deadly weapons. He opined that the more experienced gang member would direct the operation and be the actual robber while the less experienced person would drive the car and, in this regard, the robbery was at the direction of the gang. Additionally, defendant initially denied to police that he and his companion had participated in the robbery, which the expert testified elevated his status in the gang. Thus, as in *Albillar*, there was evidence apart from the gang expert's that supported his opinion that the robbery had been committed in association with or at the direction of Gateway. And, as in *Albillar*, the

expert's opinion, along with this evidence, supports the implied finding that the robbery had been committed in association with or at the direction of Gateway.[10]

In *Albillar*, the gang expert also testified that the defendants' gang had engaged in a pattern of violent, vicious and brutal crimes against rival gangs and residents in and outside their turf. (*Albillar, supra,* 51 Cal.4th at p. 53.) He went on to say, " '[W]hen three gang members . . . commit a violent brutal attack on a victim, that's elevating their individual status, and they're receiving a benefit. They're putting notches in their reputation. When these members are doing that, the overall entity benefits and strengthens as a result . . . .' " (*Id.* at p. 63.) He said that reports of such incidents " 'rais[e] the[] level of fear and intimidation in the community.' " (*Ibid.*) When given a hypothetical question based on the facts of the case, the expert opined that these crimes had been committed for the benefit of the gang, explaining, " 'More than likely this crime is reported as not three individual named Defendants conducting a rape, but members of [the gang] conducting a rape, and that goes out in the community by way of . . . word of mouth.' "[11] (*Ibid.*) The Supreme Court concluded that the foregoing constituted sufficient evidence that the crimes had been committed for the benefit of the gang, noting, "Expert opinion that particular criminal conduct benefited a gang by enhancing its reputation for viciousness can be sufficient to raise th[at] inference . . . ." (*Ibid.*)

The expert here testified that robberies were one of the primary activities of Gateway and commission of violent crimes enhanced the gang's reputation in the community. Additionally, defendant's companion had enhanced his standing within Gateway by committing robberies and assaults with deadly weapons. The expert's testimony that the perpetrators of this robbery would tell at least one other person in the neighborhood about what they had done and it would get around the neighborhood and enhance their reputation in the gang and the gang's status in the community was no more baseless and speculative[12] than the expert testimony in *Albillar*. Therefore, defendant's assertion that there was insufficient evidence to support the expert's opinion that the robbery was done to benefit Gateway is unpersuasive.

---

[10] We note that defendant completely ignores these bases for the gang enhancement findings and confines his argument to whether the evidence supported the finding that the robbery benefitted Gateway, despite the fact that the enhancement finding must be affirmed upon our conclusion that any of the three bases was supported by substantial evidence. (See *People v. Guiton* (1993) 4 Cal.4th 1116, 1129 [17 Cal.Rptr.2d 365, 847 P.2d 45].)

[11] The victim was aware that two of her three assailants were members of the gang.

[12] Thus, defendant's argument, that evidence was necessary that defendant and/or his companion bragged about the robbery, is inconsistent with *Albillar*.

*In re Frank S.* (2006) 141 Cal.App.4th 1192 [46 Cal.Rptr.3d 839], cited by defendant, is distinguishable. The facts upon which the gang expert in *Frank S.* concluded that the minor's carrying a dirk or dagger benefitted a gang were as follows: "[T]he expert simply informed the judge of her belief of the minor's intent with possession of the knife, an issue reserved to the trier of fact. She stated the knife benefits the Nortenos since 'it helps provide them protection should they be assaulted by rival gang members.' However, unlike in other cases, the prosecution presented no evidence other than the expert's opinion regarding gangs in general and the expert's improper opinion on the ultimate issue to establish that possession of the weapon was 'committed for the benefit of, at the direction of, or in association with any criminal street gang . . . .' [Citation.] The prosecution did not present any evidence that the minor was in gang territory, *had gang members with him,* or had any reason to expect to use the knife in a gang-related offense. In fact, the only other evidence was the minor's statement to the arresting officer that he had been jumped two days prior and needed the knife for protection." (*Id.* at p. 1199, italics added.) Here, inter alia, defendant drove the car for his fellow gang member, who actually committed the robbery.

Also distinguishable is the holding of *People v. Killebrew* (2002) 103 Cal.App.4th 644, 658 [126 Cal.Rptr.2d 876], that the expert's opinion that when one gang member possesses a gun, other gang members in the car with him know of the gun and, therefore, constructively possess it, was improperly admitted to prove the defendant's knowledge and intent in the charged conspiracy to possess a handgun. Here, the expert testified to neither defendant's knowledge nor intent as to the robbery.

Finally, defendant's reliance on *People v. Ramon* (2009) 175 Cal.App.4th 843, 853 [96 Cal.Rptr.3d 459], is also misplaced because the appellate court concluded that the expert had not identified the crime the defendant and his fellow gang member committed as one of the activities of the gang. Here, in contrast, the expert testified that Gateway committed robberies, in fact, was notorious for doing so, including those of fast-food restaurants.

3. *Imposition of Section 12022.53, Subdivision (e) Enhancement and Consecutive Sentence for Violating Section 186.22, Subdivision (a)*

    a. *Section 12022.53, subdivision (e)(2)*

The sentencing court imposed a 10-year enhancement under section 12022.53, subdivision (e) and sentenced defendant to a one-third consecutive term of eight months for his conviction of the substantive offense of actively participating in a street gang (§ 186.22, subd. (a)). Defendant here asserts that under section 12022.53, subdivision (e)(2), he cannot be sentenced for the

substantive offense. Although we conclude, below, that the sentence for the substantive offense must be stayed pursuant to section 654, we disagree with defendant that section 12022.53, subdivision (e)(2) prohibits sentencing for it.

■ In *People v. Brookfield* (2009) 47 Cal.4th 583 [98 Cal.Rptr.3d 535, 213 P.3d 988] (*Brookfield*), the unarmed defendant was sentenced to a life term under section 186.22, subdivision (b)(4)(B) because he committed the crime to benefit a street gang. (*Brookfield*, at p. 590.) The Supreme Court held that the 10-year enhancement under section 12022.53, subdivision (e) could not also be imposed because of the following provision: " 'An enhancement for participation in a criminal street gang . . . commencing with Section 186.20 . . . shall not be imposed . . . in addition to an enhancement imposed pursuant to this subdivision, unless the person personally used or . . . discharged a firearm . . . .' " (*Brookfield*, at p. 591.) The Supreme Court noted that section 186.22 contains *sentence enhancements*, which it listed as two, three or four years under subdivision (b)(1)(A), five years under subdivision (b)(1)(B) or 10 years under subdivision (b)(1)(C) and *penalty provisions*, which it listed as the life sentence under subdivision (b)(4) and two others, which it did not describe, under subdivisions (b)(5) and (d). (*Brookfield*, at p. 591.) *Conspicuously absent from the Supreme Court's listing of section 186.22's enhancements and penalty provisions is any mention of section 186.22, subdivision (a), the substantive offense of active participation in a criminal street gang.* The court held that section 12022.53, subdivision (e)(2)'s prohibition on imposing an enhancement under section 186.22 in addition to the 10-year enhancement under section 12022.53, subdivision (e) applied to both *sentence enhancements* and *penalty provisions* under section 186.22. (*Brookfield*, at p. 592.) It explained that allowing both a section 186.22 penalty provision and the 10-year enhancement under section 12022.53, subdivision (e) to be applied to an unarmed accomplice in a gang-related case would result in the accomplice receiving the same sentence as the gunman, when it was clear that section 12022.53 draws a distinction, for purposes of punishment, between the gunman and the accomplice. (*Brookfield*, at p. 594.)

The question becomes whether *Brookfield*'s inclusion of section 186.22 penalty provisions within the umbrella of enhancements addressed in section 12022.53, subdivision (e)(2) should extend also to the substantive crime of active participation in a street gang under section 186.22, subdivision (a).

■ As already stated, the Supreme Court in *Brookfield* did not mention subdivision (a) in its listing of sentence enhancements and penalty provisions in section 186.22. Moreover, there can be no dispute that a substantive offense is neither a sentence enhancement nor a penalty provision. (See *People v. Warinner* (1988) 200 Cal.App.3d 1352, 1355 [247 Cal.Rptr. 197]; *People v. Parrish* (1985) 170 Cal.App.3d 336, 344 [217 Cal.Rptr. 700];

*People v. Boerner* (1981) 120 Cal.App.3d 506, 511 [174 Cal.Rptr. 629].) Moreover, the reasoning in *Brookfield* for considering section 186.22 penalty provisions as enhancements has no application to defendants who are sentenced for both the substantive offense and receive a 10-year enhancement under section 12022.53, subdivision (e). ■ Therefore, we do not feel constrained by *Brookfield* to interpret section 12022.53, subdivision (e)(2)'s reference to "enhancement for participation in a criminal street gang pursuant to . . . [section] 186.20 [et seq.]" as including the substantive offense. There being no other prohibition of which defendant has made us aware, other than section 654, we cannot conclude that defendant cannot both be sentenced for the substantive offense and have his robbery sentence enhanced under section 12022.53, subdivision (e).

### b.   *Section 654*

Defendant claims the sentencing court should have stayed the term for his active participation in a criminal street gang because it was based on the same intent he had when he participated in the robberies, i.e., to benefit Gateway. We agree.

The prosecutor argued to the jury that one element of the former offense, i.e., that defendant willfully assisted, furthered or promoted felonious criminal conduct by members of the gang, was proven by defendant's participation in these robberies. There was no evidence introduced that defendant participated in any other felonious conduct by members of Gateway.

■ In *People v. Sanchez* (2009) 179 Cal.App.4th 1297 [101 Cal.Rptr.3d 639] (Fourth Dist., Div. Two) the defendant was convicted of active participation in a gang and two counts of robbery, but the jury found not true allegations that the robberies had been committed to benefit a gang. (*Id.* at p. 1301.) This court held that section 654 precluded multiple punishment for both active participation in a gang, an element of which requires that the defendant actually commit or aid and abet felonious criminal conduct by members of the gang, and the underlying felony that is used to satisfy this element of gang participation. (*Sanchez*, at pp. 1301–1302.) Here, we have the added fact that defendant participated in the robberies to benefit Gateway and he was separately punished for that. This is even more reason for us to adhere to the holding in *Sanchez*.[13] It vitiates the People's argument that *Sanchez* "announced a rule of law which effectively obliterates the legislative intent behind enacting a statute to punish active participants of a . . . gang."

---

[13] We note that this issue is currently pending before the California Supreme Court in *People v. Mesa*, review granted October 27, 2010, S185688.

## Disposition

Defendant's eight-month sentence for active participation in a street gang (count 4) is ordered stayed pursuant to section 654. The trial court is directed to amend the abstract of judgment and minutes of the sentencing hearing to stay that term, making defendant's total sentence 13 years. The trial court is further directed to amend the abstract of judgment and minutes of the sentencing hearing to show that defendant's 10-year enhancement on count 1 was imposed under section 12022.53, subdivision *(e)* and not section 12022.53, subdivision *(b)* as both documents currently state. In all other respects, the judgment is affirmed.

McKinster, J., and King, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 10, 2011, S194436.