Filed 6/24/13  P. v. Fields CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>DERRICK FIELDS,<br><br>　　Defendant and Appellant. | G046489<br><br>(Super. Ct. No. 11NF2712)<br><br>O P I N I O N |

　　　　　Appeal from a judgment of the Superior Court of Orange County, Steven D. Bromberg, Judge.  Affirmed.

　　　　　Susan S. Bauguess, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　　　Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Susan Miller, Deputy Attorneys General, for Plaintiff and Respondent.

*　　　*　　　*

A jury convicted defendant Derrick Fields of two counts of robbery (Pen. Code, §§ 211, 212.5, subd. (c)) and one count of street terrorism (Pen. Code, § 186.22, subd. (a)). As to the robbery counts, the jury found true gang enhancements (Pen. Code, § 186.22, subd. (b)(1)) and firearm enhancements (Pen. Code, § 12022.53, subds. (b), (e)(1)). The trial court sentenced defendant to eight years eight months in state prison.[1] Defendant raises a variety of issues in this appeal, including the admissibility of a prior conviction and the sufficiency of the evidence supporting enhancements found true by the jury. Defendant also asserts sentencing errors occurred with regard to the imposition of certain statutory fines. We affirm the judgment.

FACTS

*Evidence Pertaining to Events of May 10, 2011*

At about 11:00 a.m., on May 10, 2011, two men entered Bob's Market in Buena Park, California. The men perused the beverage case. One of the men picked up a bag of chips and placed the bag on the checkout counter. A store employee was behind the counter. One of the men displayed a revolver. He said, "I have a gun," and indicated it was a holdup. The armed man instructed his companion to go around the counter. The store employee was scared and did not resist. The unarmed man opened the cash register and took approximately $65. The armed man asked a customer near the counter for his wallet (which contained about $90) and cell phone. The customer complied, handing over both items. The customer was afraid the armed man might shoot him. The two robbers then left the store. The store employee dialed 911 and the police responded.

---

[1] The sentence took into consideration the fact that defendant was already in prison serving a sentence of 19 years four months for a separate series of crimes described in an earlier opinion of this court. (See *People v. Fields* (Mar. 6, 2013, G045906) [nonpub. opn.].) Upon defendant's request, we previously took judicial notice of the record from this earlier appeal.

2

Neither the Bob's Market employee nor the customer was able to identify defendant in court as one of the two men participating in the robbery. Likewise, when presented with photographic lineups nine days after the robbery, neither the employee nor the customer identified defendant. But defendant's fingerprints were subsequently found on the chip bag. And both the employee and the customer identified another man, Antoine Dozier, as someone who looked similar to one of the two men involved in the robbery (although they disagreed as to what role Dozier played). At the time of the photographic lineup, the customer mentioned to the officer conducting the lineup that there was a third man standing outside Bob's Market who appeared to be acting as a lookout.

Defendant resided in Los Angeles before his arrest. Defendant was arrested in connection with this case in Los Angeles (on 81st St., near Normandie Ave.). In a post-arrest interview, defendant denied that he had ever been to Buena Park and denied that he "goes to" Orange County.

It was stipulated that "[o]n August 25, 2011, defendant Derrick Fields was convicted of robbery involving use of a firearm for the May 10, 2011, robbery of Mundo Cellular located at 1909 East La Palma Avenue, Anaheim, California, which occurred at approximately 11:30 a.m." In other words, approximately one half hour after the Bob's Market robbery in Buena Park, defendant participated in the Mundo Cellular robbery in Anaheim. Both Buena Park and Anaheim are municipalities in Orange County near the 91 freeway. Bob's Market is "not that far at all" from the 91 freeway, perhaps two to three blocks away. Mundo Cellular is "a little bit further" from the 91 freeway, perhaps four or five blocks away. It would take someone about 10 minutes to drive from Bob's Market to Mundo Cellular on a weekday at 11:00 a.m., driving between 60 and 65 miles per hour (presumably on the freeway portion of the drive). A police officer's review of surveillance footage from the Mundo Cellular robbery and a photograph extracted from

3

the footage led him to identify defendant and Dozier as two of the three Mundo Cellular robbers.

*Gang Evidence*

By his own admission (at least as to a period of time before the past few years), defendant was a member of the Eight Trey Gangster Crips.

Los Angeles Police Officer Richard Mendoza testified as an expert witness with particular knowledge regarding Eight Trey Gangster Crips, a gang based in South Los Angeles. Eight Trey Gangster Crips is (and was on May 10, 2011) an active criminal street gang with about 550 members. The gang's primary activities include carjacking, narcotic sales, witness intimidation, robbery, assaults with deadly weapons, weapons violations, and murder. Gang members boast about their criminal activities, both verbally and with graffiti. A common phrase used by Eight Trey Gangster Crips is "'paper chasin,'" which "basically means they're out to get money, whether it be narcotics sales or robbing people."

Mendoza identified defendant in the courtroom, having met defendant several times in the past. Defendant's gang moniker is Far West Blue. Defendant has tattoos all over his body featuring gang symbols. Mendoza has stopped defendant at least a dozen times; on occasion, defendant admitted his membership in Eight Trey Gangster Crips. Several times, defendant was stopped in the company of other Eight Trey Gangster Crips. Mendoza had dozens of contacts with Antoine Dozier, who has also admitted to Mendoza that he is a member of Eight Trey Gangster Crips. Mendoza identified a third participant in the Mundo Cellular robbery, Skylar Wilkerson, who has also admitted in the past to being a member of Eight Trey Gangster Crips. Defendant appeared in the Mundo Cellular surveillance video alongside Dozier and Wilkerson. Mendoza opined that defendant was a member of the Eight Trey Gangster Crips on May 10, 2011.

4

Based on a hypothetical question with facts mirroring those in this case, Mendoza opined that the Bob's Market robberies were committed for the benefit of and in association with a criminal street gang. The robberies benefitted the gang because "[i]t's all about money, power and respect not only for the individual, but the gang itself." The robberies also assisted and promoted the gang because multiple gang members worked together to achieve criminal ends.

DISCUSSION

*Admissibility of Mundo Cellular Conviction*

Defendant first contends the court erred by allowing the prosecutor to present evidence of defendant's conviction of the Mundo Cellular robbery. This evidence was admitted for the limited purposes of proving defendant had the opportunity to commit the Bob's Market robbery and proving the identity of defendant as one of the Bob's Market robbers.[2] The court disallowed mention of defendant's gang offense

[2] The court provided the following limiting instruction (based on CALCRIM No. 375) in connection with this evidence: "The People presented evidence that the defendant committed another offense of robbery involving use of a firearm that was not charged in this case. You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant, in fact, committed the uncharged offense. . . . If the People have not met this burden, you must disregard this evidence entirely. [¶] If you decide that the defendant committed the uncharged offense, you may, but are not required to, consider that evidence for the limited purpose of deciding . . . the issues of identity, the defendant was the person who committed the offense alleged in this case, or for the other purpose that the defendant had the opportunity to commit the offenses alleged in this case. [¶] In evaluating this evidence, consider the similarity or lack of similarity between the uncharged offense and the charged offense. Do not consider this evidence for any other purpose except for the limited purpose of opportunity and identity in determining the defendant's credibility. Do not conclude from this evidence that the defendant had a bad character or is disposed to commit crime. [¶] If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty" of the charged offenses.

5

conviction and gang enhancements arising out of the Mundo Cellular robbery. The court also recommended presentation of the evidence of the robbery by stipulation rather than calling witnesses to the Mundo Cellular robbery, a procedure to which the parties apparently consented.

Despite its relevance, "evidence of character in the form of specific instances of uncharged misconduct, to prove the conduct of that person on a specified occasion," is inadmissible. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 393, superseded on other grounds by Evid. Code, § 1108; see also Evid. Code, § 1101, subd. (a).) But "[n]othing . . . prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . . ) other than his or her disposition to commit such an act." (Evid. Code, § 1101, subd. (b).) Thus, "[e]vidence of other crimes is admissible only if relevant to prove a material fact at issue, separate from criminal propensity." (*People v. Demetrulias* (2006) 39 Cal.4th 1, 14.)

"The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) In cases involving uncharged misconduct, "[t]he probative value of the uncharged offense evidence must be substantial . . . ." (*People v. Kipp* (1998) 18 Cal.4th 349, 371.)

We review evidentiary rulings under Evidence Code sections 1101 and 352 for an abuse of discretion. (*People v. Foster* (2010) 50 Cal.4th 1301, 1328.) "''"[A] trial court's ruling will not be disturbed, and reversal . . . is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice."''" (*Id*. at pp. 1328-1329.)

The court did not abuse its discretion. The identity of the Bob's Market robbers and defendant's opportunity to participate in the Bob's Market robbery were

6

clearly material facts at issue separate from criminal propensity. Defendant resided in Los Angeles. Defendant denied he was present at the Bob's Market robbery in Buena Park. Placing defendant in Orange County near the 91 freeway with a firearm in the possession of his fellow participants in the Mundo Cellular robbery at 11:30 a.m. showed defendant had the opportunity to participate in the Bob's Market robbery. Admissibility of an uncharged offense to prove identity in the charged offense depends upon "distinctive common marks" between the two offenses. (*People v. Medina* (1995) 11 Cal.4th 694, 748.) The distinctive common marks between the two crimes here include the commission of the crimes on the same day, during the same hour, and in the same geographic region (Orange County along the 91 freeway), as well as the presence of Dozier at both crime scenes. (See *People v. Robinson* (1995) 31 Cal.App.4th 494, 503 [presence of same accomplice at prior uncharged arson and charged arson was distinctive mark tending to show defendant was present at charged arson].)

*Sufficiency of Evidence Supporting Gang Enhancements*

Next, defendant contends there was insufficient evidence to support the jury's gang enhancement findings under Penal Code section 186.22, subdivision (b)(1), which attached to the Bob's Market robberies. Penal Code Section 186.22, subdivision (b)(1), applies only if a crime is committed: (1) "for the benefit of, at the direction of, or in association with any criminal street gang"; and (2) "with the specific intent to promote, further, or assist in any criminal conduct by gang members." We must review the entire record in the light most favorable to the judgment in determining whether it contains substantial evidence from which a rational trier of fact could have found the charged enhancements true beyond a reasonable doubt. (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60 (*Albillar*).)

For purposes of this appeal, defendant does not dispute his membership in Eight Trey Gangster Crips or deny that Eight Trey Gangster Crips is a criminal street

7

gang. Instead, defendant claims the particular circumstances of the Bob's Market robbery do not satisfy either prong of the Penal Code section 186.22, subdivision (b)(1) analysis. Defendant points to cases holding that a defendant's gang membership, plus expert opinion testimony pertaining to a gang's general culture, habits, and criminal profile, is insufficient (without more) to establish a particular crime is subject to a Penal Code section 186.22, subdivision (b)(1) enhancement. (See, e.g., *People v. Ochoa* (2009) 179 Cal.App.4th 650, 661-665 [expert opinion that carjacking was gang related, which rested on defendant's gang membership and fact that the crime involved car theft, was insufficient to support enhancement]; *People v. Ramon* (2009) 175 Cal.App.4th 843, 851 [deeming speculative an expert's testimony related to whether crime was committed by defendant and his accomplice on their own behalf or on behalf of the gang]; *In re Frank S.* (2006) 141 Cal.App.4th 1192, 1199 [no substantial evidence for gang enhancement when only evidence of specific intent was expert's opinion that possession of knife provides protection against rival gang members].)

As to the first element of the enhancements, there is substantial evidence supporting the jury's finding the attack was "committed for the benefit of, at the direction of, or in association with a[] criminal street gang." (Pen. Code, § 186.22, subd. (b)(1).) The jury could have concluded defendant and Dozier were gang members who perpetrated the Bob's Market robbery together. Along with the Mundo Cellular robbery, the Bob's Market robbery was part of a temporally connected pair of robberies. A third gang member, Wilkerson, was also present at the Mundo Cellular robbery, and there is evidence suggesting a third man acted as lookout at the Bob's Market robbery. The evidence indicates the Bob's Market robbery was preplanned and distinct roles were assigned to the participants. The gang expert testified as to how robberies are one of Eight Trey Gangster Crips' primary activities and how Eight Trey Gangster Crips engage in "paper chasin" activities for the benefit of the gang. The gang expert opined that the Bob's Market robbery benefitted the Eight Trey Gangster Crips. (See *Albillar*, *supra*, 51

8

Cal.4th at p. 63 ["Expert opinion that particular criminal conduct benefitted a gang by enhancing its reputation for viciousness can be sufficient to raise the inference that the conduct was 'committed for the benefit of . . . a[] criminal street gang'"].) The jury was free to consider the circumstances of this particular robbery and to agree with the expert testimony suggesting the robbery at issue was "committed for the benefit of, at the direction of, or in association with" Eight Trey Gangster Crips. (*Albillar*, *supra*, 51 Cal.4th at pp. 60-64 [gang members who raped victim together subject to gang enhancement]; *People v. Hunt* (2011) 196 Cal.App.4th 811, 818-822 [defendant committing robbery with fellow gang member subject to gang enhancement].)

There is also substantial evidence supporting the jury's finding that defendant had the "specific intent to promote, further, or assist in any criminal conduct by gang members." (Pen. Code, § 186.22, subd. (b)(1).) The statute merely requires assistance to "criminal conduct by gang members," regardless of the specific charged crime. (*Ibid.*; see *Albillar*, *supra*, 51 Cal.4th at pp. 65 [enhancement "encompasses the specific intent to promote, further, or assist in *any* criminal conduct by gang members — including the current offenses — and not merely *other* criminal conduct by gang members"].) "Commission of a crime in concert with known gang members is substantial evidence which supports the inference that the defendant acted with the specific intent to promote, further or assist gang members in the commission of the crime." (*People v. Villalobos* (2006) 145 Cal.App.4th 310, 322 [affirming conviction of girlfriend of gang member under § 186.22, subd. (b)(1)]; see also *People v. Morales* (2003) 112 Cal.App.4th 1176, 1198 ["specific intent to *benefit* the gang is not required"].) Defendant committed the Bob's Market robbery with Dozier and perhaps Wilkerson. There is substantial evidence of the second prong.

In light of the foregoing analysis, a subsidiary argument raised by defendant must also fail. Defendant claims the true findings on the firearm use enhancement (Pen. Code, § 12022.53, subds. (b), (e)(1)) cannot stand because these

findings were premised on the jury's true findings under Penal Code section 186.22, subdivision (b)(1). (Pen. Code, § 12022.53, subd. (e)(1)(A) [vicarious liability for confederate's use of gun in specified felonies when gang enhancement found true].) Because there is substantial evidence supporting defendant's gang enhancements, we reject defendant's gun enhancement argument.

*Imposition of Fines at Sentencing*

Finally, defendant takes issue with certain fines imposed at sentencing. The court imposed a restitution fine in the amount of $240 (Pen. Code, § 1202.4, subd. (a)(1)) and a parole revocation fine of $240 (Pen. Code, § 1202.45, subd. (a)), which was stayed pending any violation of parole. Although he did not raise such an objection below, defendant contends these fines constitute an ex post facto clause violation under the federal and state Constitutions.

At the time of the Bob's Market robbery in May 2011, defendant faced *minimum* fines of $200 under the applicable statutes for the commission of a felony. (See Stats. 2011, ch. 45, § 1, p. 1830 [fine "shall not be less than two hundred dollars ($200), and not more than ten thousand dollars ($10,000)"]; Stats. 2007, ch. 302, § 15, p. 2455 ["parole revocation restitution fine in the same amount" as restitution fine].) Subsequent versions of the relevant statutes require *minimum* fines of $240 for the commission of a felony, between January 1, 2012, and December 31, 2012. (See Pen. Code, §§ 1202.4, subd. (b)(1), 1202.45, subd. (a).) Defendant contends he is entitled to a $40 reduction as to each of these fines.

"A statute violates the ex post facto clause when, on its face or as applied, it retroactively "'increase[s] the punishment for criminal acts.'"" (*People v. Callejas* (2000) 85 Cal.App.4th 667, 670.) "[C]ourts have consistently held restitution fines qualify as 'punishment' for purposes of the ex post facto clause." (*Ibid.*)

10

But even assuming the issue is not forfeited and the modest increase in the minimum applicable fine constitutes punishment, an ex post facto violation did not occur. One might speculate from the record that the court intended to impose the absolute minimum fines under law in effect after January 1, 2012 by its selection of the $240 number, but there is nothing explicit in the record to support this supposition. The $240 fines were well within the court's discretion under law in effect in May 2010. Thus, defendant is not entitled to a $40 reduction in the amount of these fines.

Defendant also posits the court erred by imposing a fine of $10 pursuant to Penal Code section 1202.5, subdivision (a). This statute provides in relevant part that "the court shall order the defendant to pay a fine of ten dollars ($10) in addition to any other penalty or fine imposed" when a defendant is convicted of specified offenses, including robbery. (*Ibid*.) At sentencing, the court stated defendant will "also pay a theft and robbery fine pursuant to Penal Code section 1202.5, subdivision (a), which is $10 plus penalty assessments. An odd number, I know." It does not appear there are any additional "penalty assessments" on the abstract of judgment. Thus, there is $10 at issue. Defendant did not object to the imposition of this $10 fine at trial. Defendant therefore forfeited the issue on appeal. (*People v. Crittle* (2007) 154 Cal.App.4th 368, 371 ["Since defendant did not raise the issue in the trial court, we reject his contention that the fines must be reversed because the court did not make a finding of defendant's ability to pay them, and nothing in the record shows he had the ability to pay"].)

Defendant claims he lacked notice of this issue because he had previously waived his right to a probation report and requested immediate sentencing. But Penal Code section 1202.5, subdivision (a), is obviously in the publicly-available Penal Code. Regardless of the existence of a probation report, defendant had notice of Penal Code section 1202.5, subdivision (a), prior to the sentencing hearing and he was entitled to object to the imposition of the $10 fine based on his now-professed inability to pay. Defendant did not do so and thereby forfeited the issue.

11

DISPOSITION

The judgment is affirmed.

IKOLA, J.

WE CONCUR:

MOORE, ACTING P. J.

ARONSON, J.